VALERIE CAPRONI, United States District Judge
Defendants Jason Rose and Junior Robinson have each moved for a reduced sentence under the First Step Act of 2018 (hereinafter "First Step Act"). Pub. L. No. 115-391, 132 Stat. 5194 (2018). Most relevant here, Section 404 of the First Step Act makes retroactive certain provisions of the Fair Sentencing Act of 2010 (hereinafter "Fair Sentencing Act") and empowers district courts to "impose a reduced sentence" as if the Fair Sentencing Act had been in effect at the time of the defendant's offense. Under the First Step Act, the district court must first determine a defendant's eligibility for relief and then decide whether a reduced sentence is appropriate. What the district court may appropriately consider when imposing a reduced *226 sentence presents an unsettled question of law. This Court concludes that both Defendants are eligible for relief under the First Step Act and that the Court may appropriately consider post-sentencing factual developments using the framework established in 18 U.S.C. § 3553(a).
I. BACKGROUND
Defendants Jason Rose and Junior Robinson were each sentenced to a mandatory minimum sentence of twenty-five years' imprisonment after being convicted at trial in 2005. Dkts. 231, 242. They were each convicted of conspiracy to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), Dkt. 109 at 1-3, 14,[1] and of possession of a firearm in relation to a drug-trafficking offense in violation of 18 U.S.C. § 924(c), Dkt. 109 at 14-15.
Based on the version of the Controlled Substances Act in effect when Defendants were sentenced, distribution of 50 grams or more of crack cocaine (cocaine base) carried a mandatory minimum sentence of ten years. 21 U.S.C. § 841(b)(1)(A) (effective November 2, 2002 to March 8, 2006). For defendants like Mr. Rose and Mr. Robinson, each of whom had a prior felony drug conviction, the mandatory minimum doubled to twenty years. Id. ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years."). In addition, the firearms offense carried a mandatory consecutive sentence of not less than five years, bringing the aggregate minimum to twenty-five years. 18 U.S.C. § 924(c)(1)(A) ("[A]ny person who, during and in relation to any ... drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime ... be sentenced to a term of imprisonment of not less than 5 years.").
The Honorable Shira Scheindlin, who was originally assigned to this case, sentenced both Mr. Robinson and Mr. Rose to the twenty-five year mandatory minimum sentence. Dkts. 231, 242. For purposes of calculating Defendants' sentencing ranges under the advisory United States Sentencing Guidelines, Judge Scheindlin found by a preponderance of the evidence that both Defendants were responsible for conspiring to distribute 1.5 kilograms of crack cocaine. Robinson Sentencing Tr. at 13; Rose Sentencing Tr. at 11-12.
In response to substantial public opinion that the disparities in the statutory penalties imposed for offenses involving powder cocaine and crack cocaine were fundamentally unfair, in 2010, Congress passed the Fair Sentencing Act. Pub. L. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced, but did not entirely eliminate, those disparities by increasing the drug quantities triggering mandatory minimums for crack offenses "from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." Dorsey v. United States , 567 U.S. 260, 269, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012). This had the effect of reducing the powder-to-crack ratio from 100-to-1 to 18-to-1. Id. at 269, 132 S.Ct. 2321.
The Fair Sentencing Act took effect on August 3, 2010, and applied only to sentences imposed thereafter.
*227 Id. at 264, 132 S.Ct. 2321. Had the Fair Sentencing Act been in effect at the time Defendants' sentences were imposed, 50 grams of crack cocaine-the amount for which the jury found each Defendant responsible beyond a reasonable doubt-would have triggered the 5-year minimum, rather than the 10-year minimum.[2] That five-year minimum would also have been doubled for these Defendants because they both had a prior felony drug conviction. See 21 U.S.C. § 841(b)(1)(A)-(B). Thus, for the drug conspiracy count, had Defendants been sentenced after the enactment of the Fair Sentencing Act, their mandatory minimum sentence would have been 10 years, rather than 20. Because the five-year mandatory consecutive sentence for the weapons count would have remained unchanged, Defendants would have faced an aggregate minimum of 15 years under the Fair Sentencing Act, as opposed to 25 years.
In 2018, Congress passed the First Step Act, which made retroactive the crack cocaine minimums in the Fair Sentencing Act. Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). District courts across the country, including within this circuit, have been divided as to defendants' eligibility for relief and the exact nature of the proceedings that sentencing judges should be conducting pursuant to the now-retroactive Fair Sentencing Act, including whether district courts may consider facts that have occurred post-sentencing.
Defendants Rose and Robinson, both of whom are still incarcerated based on their sentences in this case, seek reduced sentences of time served. After Rose filed his motion for relief, the Government initially agreed that he was eligible for a reduced sentence, although it argued that he should not receive any relief because of his post-sentencing disciplinary record. Dkt. 390. Soon thereafter, the Government reversed its position and now argues that Defendants are not eligible for relief because their offense conduct involved more than 1.5 kilograms of crack cocaine. Dkt. 400; Dkt. 401; May 13, 2019 Hearing Tr. at 3.
II. DISCUSSION
Section 2 of the Fair Sentencing Act increased the threshold quantities of crack cocaine necessary to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1). Pursuant to § 404(b) of the First Step Act, "[a] court that imposed a sentence for a covered offense may ... impose a reduced sentence as if section[ ] 2 ... of the Fair Sentencing Act ... were in effect at the time the covered offense was committed." Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010."
The parties disagree as to Defendants' eligibility for relief under § 404(a) but agree that, as to any eligible defendant, this Court should consider factual developments that occurred after the defendant's original sentencing, including post-sentencing disciplinary records and evidence of rehabilitation. As elaborated below, the Court concludes that both Defendants are eligible for relief under the First Step Act and that the Court may appropriately consider *228 all relevant facts as of the date a reduced sentence is imposed.
A. Eligibility
Defendants are eligible to seek relief under § 404 of the First Step Act because the penalties associated with their statute of conviction were among those amended by the Fair Sentencing Act. The Government argues that the Court should assess eligibility on the basis of Defendants' actual conduct, rather than the statute of conviction. Under that approach, because Judge Scheindlin found by a preponderance of the evidence that Defendants were responsible for 1.5 kilograms of crack cocaine, an amount which exceeds the revised 280-gram threshold, the "statutory penalties" for Defendants' conduct were not "modified" by the Fair Sentencing Act. The Government's approach misreads the text of the First Step Act, undermines the purpose of the Act, and is inconsistent with the decisions of the vast majority of courts that have decided this issue.
The Government's reading of § 404(a) depends on two erroneous interpretative choices. First, the Government construes the dependent clause, "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010" (hereinafter "penalties clause"), as modifying the noun "violation," rather than modifying the phrase "Federal criminal statute." Next, the Government construes "violation" to mean the actual conduct underlying the offense, rather than the elements of the offense.
When given its most natural reading, the "penalties" clause modifies the adjacent noun phrase, "Federal criminal statute." As a general principle, courts interpret the text of criminal statutes in a manner consist with "ordinary English grammar" and rules of usage. Flores-Figueroa v. United States , 556 U.S. 646, 650, 652, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009). One such rule is that a modifier is presumed to apply to the noun or pronoun closest to it. See Lopez v. Gonzales , 549 U.S. 47, 56, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006) (explaining that courts must not "divorce a noun from the modifier next to it without some extraordinary reason"); NRDC v. FDA , 884 F.Supp.2d 127, 141-42 (S.D.N.Y. 2012) ("The ['notice'] clause is setoff by commas and immediately precedes the words 'issue an order withdrawing approval,' indicating that the 'notice' clause modifies the 'issue an order' clause and not the findings clause." (citing United States v. Liranzo , 729 F.Supp. 1012, 1014 (S.D.N.Y.1990) )). Here, the "penalties" clause is most naturally read as modifying "Federal criminal statute," the noun phrase immediately next to it. See id. Indeed, Congress appears to have deliberately inserted "Federal criminal statute" after the word "violation" and added the word "statutory" before the word "penalties" to achieve this exact result. If the Government's interpretation were correct, Congress could have straightforwardly legislated that result by omitting from § 404(a) the phrase "Federal criminal statute," which is already implied by the reference to the Fair Sentencing Act, and the adjective "statutory" before the noun "penalties." Section 404(a) would then have read: "the term 'covered offense' means a violation, the penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." But that is not what Congress did. Instead, it inserted two otherwise unnecessary references to federal statutes, making clear that eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct. See United States v. Martin , No. 03-CR-795, 2019 WL 1558817, at *3 (E.D.N.Y. Apr. 10, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act." (citation omitted)).
*229 The use of the past tense, i.e. , "were modified," in the "penalties" clause also confirms that the clause was intended to modify "statute," not "violation." See United States v. Wilson , 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) ("Congress' use of a verb tense is significant in construing statutes."). Because the Fair Sentencing Act was not retroactive, it could not have "modified" any penalties imposed for violations "committed before August 3, 2010."[3] Rather, the only "statutory penalties" that the Fair Sentencing Act could have modified were the crack-cocaine penalties provided in the Controlled Substances Act.
Second, even if the dependent clause could be construed as modifying "violation," it is at least ambiguous whether "violation" refers to the elements of the statute of conviction or the offense conduct. That ambiguity must be resolved in the defendant's favor. Both the Fair Sentencing Act and the First Step Act have the remedial purpose of mitigating the unfairness created by the crack-to-powder cocaine ratio, and the statutes should be construed in favor of broader coverage. See United States v. Allen , No. 96-CR-149, 2019 WL 1877072, at *2-3 (D. Conn. Apr. 26, 2019) ("Congress wanted to further the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that had a racially disparate impact. Given this remedial purpose, the First Step Act should be construed to provide courts with discretion to reduce a sentence when the statute the defendant violated has been modified by the Fair Sentencing Act to provide less severe penalties." (citations omitted)). The Court further notes that the Government's interpretation would dramatically curtail the reach of the First Step Act, limiting eligibility for relief to the narrow class of defendants who were found responsible for distributing more than 50 grams but less than 280 grams of crack cocaine.[4]
Construing § 404(a) in favor of broader eligibility would also be consistent with the rule of lenity, which is of particular concern here because of the potential unfairness of using offense conduct to exclude defendants from eligibility. See, e.g., id. ; United States v. Pierre , No. 07-CR-3, 372 F.Supp.3d 17, 22-23, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019). Prior to the Fair Sentencing Act, defendants had less reason to contest Government assertions that they were responsible for quantities of crack cocaine above the 50-gram threshold, as those quantities were unlikely to make a significant difference during sentencing given the high statutory minimums.[5] To preclude defendants from seeking *230 relief on the basis of facts that may have had little significance at the time they were determined would be draconian and contrary to the remedial purpose of the First Step Act.
And finally, the Government's interpretation of § 404(a) is contrary to the clear weight of persuasive authority, both within and outside the Second Circuit. See, e.g., United States v. Stanback , No. 02-CR-30020, 377 F.Supp.3d 618, 623-24, 2019 WL 1976445, at *3 (W.D. Va. May 2, 2019) (concluding that defendant was eligible for relief despite judicial finding that he was responsible for 1.5 kilograms of crack cocaine); Allen , 2019 WL 1877072, at *2-3 (concluding that defendant was eligible despite judicial finding that he was responsible for 675 grams of crack cocaine); United States v. Simons , No. 07-CR-874, 375 F.Supp.3d 379, 386-88, 2019 WL 1760840, at *6 (E.D.N.Y. Apr. 22, 2019) (concluding that defendant was eligible despite judicial finding of responsibility for more than 500 grams of crack cocaine); Martin , 2019 WL 1558817, at *3 (concluding that defendant was eligible despite stipulation that offense involved 1.5 kilograms of crack cocaine); United States v. Dodd , No. 03-CR-18, 372 F.Supp.3d 795, 797-98, 2019 WL 1529516, at *2 (S.D. Iowa Apr. 9, 2019) (concluding that defendant was eligible despite judicial finding that he was responsible for 1.5 kilograms of crack cocaine); United States v. Davis , No. 07-CR-245, 2019 WL 1054554, at *2-3 (W.D.N.Y. Mar. 6, 2019) (concluding that defendant was eligible despite plea allocution indicating that offense involved more than 1.5 kilograms of crack cocaine); United States v. Laguerre , No. 02-CR-30098, 2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019) (concluding that defendant was eligible despite judicial finding that he was responsible for 1.5 kilograms of crack cocaine); see also United States v. Powell , 360 F.Supp.3d 134, 139 (N.D.N.Y. 2019) ("The drug type and quantity used to set the statutory range under the First Step Act of 2018 is the quantity charged in the indictment and found by a jury beyond a reasonable doubt.").
The few courts that have ruled in the Government's favor either did not provide a rationale or did so in part because Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Alleyne v. United States , 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), which held that drug quantities used to determine mandatory minimum sentences must be found by a jury, were not retroactive and did not apply at the time of the original sentencing. See, e.g., United States v. Glover , No. 95-CR-8021, 377 F.Supp.3d 1346, 1356-57, 2019 WL 1924706, at *9 (S.D. Fla. May 1, 2019). But decisions predicated on the fact that Apprendi and Alleyne were not retroactive are inapposite here because the Second Circuit held, well before the Supreme Court did so in Alleyne and prior to Defendants' original sentencings, that mandatory minimum sentences can only be predicated on facts *231 found by a jury beyond a reasonable doubt or admitted by the defendant. See United States v. Gonzalez , 420 F.3d 111, 131 (2d Cir. 2005) ("[D]rug quantity is an element that must always be pleaded and proved to a jury or admitted by a defendant to support conviction or sentence on an aggravated offense under § 841(b)(1)(A) or - (b)(1)(B)."); see also United States v. Vaughn , 430 F.3d 518, 528 (2d Cir. 2005) ("We recognized in United States v. Gonzalez that mandatory minimum sentences are triggered only by a drug quantity proven to a jury beyond a reasonable doubt."). Therefore, even at the time that Defendants' sentences were originally imposed, any fact that served as the basis for a mandatory minimum sentence had to have been found by a jury beyond a reasonable doubt, rather than found by a judge by a preponderance of the evidence. The First Step Act, as a remedial statute, could not have intended this Court to ignore not only changes in the law since the original sentencing, such as Alleyne , but to sidestep previously existing precedent binding on this Court to preclude Defendants from seeking relief.
In sum, the Court finds not a modicum of support-whether in the text, the legislative history, or any precedent-for the Government's position on eligibility. The Court concludes that Defendants Rose and Robinson are eligible for a reduced sentence under the First Step Act because they were each subjected to the mandatory minimum penalty set by 21 U.S.C. § 841(b)(1)(A)(iii), which was amended by the Fair Sentencing Act of 2010.
B. Scope of Consideration
While Defendants are eligible for a reduced sentence, the Court is not required to grant relief. Section 404(c) of the First Step Act provides that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." What the Court may appropriately consider in deciding whether to impose a reduced sentence is an open question that courts have answered differently. Some courts have considered post-sentencing rehabilitation, whereas others have not-most do not engage in significant analysis of the propriety of either approach. See, e.g., Powell , 360 F.Supp.3d at 140 (considering defendant's rehabilitation and disciplinary history); Simons , 375 F.Supp.3d at 388-89, 2019 WL 1760840, at *7 (considering defendant's educational record and family ties). But see Martin , 2019 WL 1558817, at *4 (declining to consider 18 U.S.C. § 3553(a) factors or post-sentencing conduct). This Court concludes that the First Step Act authorizes the Court to re-evaluate § 3553(a) factors in light of post-sentencing factual developments.
Although the precise statutory basis for their position is unclear, the parties agree that district courts, upon a finding of eligibility, should consider post-sentencing evidence, both favorable and unfavorable to the defendant. May 13, 2019 Hearing Tr. at 4-5. As defense counsel has pointed out, the U.S. Sentencing Commission has informally suggested that district courts should consider 18 U.S.C. § 3553(a) factors, although the Commission's statement does not indicate whether the Court should apply the factors to the record as it existed before the original sentencing judge or whether the analysis should incorporate post-sentencing conduct. See Stanback , 377 F.Supp.3d at 625 n.2, 2019 WL 1976445, at *5 n.2 (citing U.S. Sentencing Comm'n, ESP Insider Express, Special Edition, First Step Act (Feb. 2019), available at https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf).
The Government argues that, although the First Step Act allows the Court to consider new facts, it does not authorize the imposition of a new sentence via a *232 plenary resentencing hearing. A plenary resentencing hearing carries with it all of the procedural trappings and collateral effects of the original sentencing-in addition to mandatory application of § 3553(a) factors to new facts, a full resentencing would allow the parties to raise or re-raise arguments that are unrelated to the issue(s) that precipitated the resentencing, including any non-retroactive changes in the law. See Shabazz v. United States , 923 F.3d 82, 83 (2d Cir. 2019). Among other things, the defendant's presence, unless voluntarily waived, would be required at a plenary sentencing hearing. See Fed. R. Crim. P. 43.
In contrast to a plenary resentencing, a sentence modification, which allows the court to alter a previously imposed sentence for specifically delineated reasons, is a narrowly circumscribed exception to the finality of sentences. See 18 U.S.C. § 3582(c) ; Chavez-Meza v. United States , --- U.S. ----, 138 S.Ct. 1959, 1965, 201 L.Ed.2d 359 (2018). Section 3582(c) allows for sentence modifications for (1) defendants who can show extraordinary or compelling reasons, (2) certain defendants over the age of 70 who have served at least 30 years of their terms and do not pose a threat to society, and (3) defendants whose sentencing ranges would be lower under later-revised Sentencing Guidelines. See 18 U.S.C. § 3582(c) ; United States v. Moore , 586 F. App'x 801, 803 (2d Cir. 2014). For each of those scenarios, § 3582(c) specifically directs the sentencing court to consider the § 3553(a) factors before ruling on the motion for a reduction. Apart from those three circumstances, Section 3582(c)(1)(B), which some courts have characterized as the "procedural vehicle" for First Step Act motions, allows for modifications "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." E.g., United States v. Potts , No. 98-CR-14010, 2019 WL 1059837, at *3 (S.D. Fla. Mar. 6, 2019).
Some courts have held that, because First Step Act proceedings ostensibly fall under § 3582(c)(1)(B), the scope of the district court's review is as constrained as its review of motions brought pursuant to § 3582(c)(1)(A) or § 3582(c)(2). See Glover , 377 F.Supp.3d at 1356-57, 2019 WL 1924706, at *9 ; Martin , 2019 WL 1558817, at *4. Unlike the other three sentence modification provisions, however, § 3582(c)(1)(B) merely redirects courts to Rule 35 and any other sources of authority that may exist, without providing any substantive standard of its own. United States v. Triestman , 178 F.3d 624, 629 (2d Cir. 1999) ("Subsection (c)(1)(B) simply notes the authority to modify a sentence if modification is permitted by statute ." (quoting S. Rep. No. 98-225 (1984)) (emphasis in Triestman )). Section 3582(c)(1)(B) is, therefore, not itself a source of authority for sentence modifications, nor does it delineate the scope of what the district court should consider when resentencing is authorized by another provision. In other words, any substantive limit on the district court's ability to grant a modification under § 3582(c)(1)(B) must be set by Rule 35 or whatever external authority that allows for the modification. See id. For that reason, the scope of a sentencing proceeding authorized by the First Step Act is not constrained by § 3582(c)(1)(B), to the extent it is applicable; nor would it be helpful, as some courts have done, to analogize to the other modification provisions under § 3582(c), which are subject to entirely different standards. See Dodd , 372 F.Supp.3d at 797-98, 2019 WL 1529516, at *2 ("This argument [by the Government] rests on a misplaced equivalency with sentence reductions under 18 U.S.C. § 3582(c)(2), a narrow avenue ... [that] does not 'impose a new sentence in the usual sense.' In contrast, section 404(b) of *233 the First Step Act contains a broader grant of authority to 'impose a reduced sentence.' " (citations omitted)). But see Glover , 377 F.Supp.3d at 1356-57, 2019 WL 1924706, at *9 (holding that scope of First Step Act or § 3582(c)(1)(B) proceeding is narrow in part because only narrow review is available under § 3582(c)(2) ). Therefore, the Court concludes that the modification regime set forth in § 3582 does not preclude this Court from considering anew the sentencing factors enumerated in § 3553(a).[6]
The text of the First Step Act, read in conjunction with other sentencing statutes, requires the Court to consider all relevant facts, including developments since the original sentence.[7] Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Because Congress is not legislating on a blank slate, the scope of the district court's discretion must be defined against the backdrop of existing sentencing statutes. In particular, under 18 U.S.C. § 3661, "for the purpose of imposing an appropriate sentence," "[n]o limitation shall be placed on the information concerning the background, character, and conduct of" the defendant. 18 U.S.C. § 3661. The Supreme Court has held that § 3661 embodies the principle "that sentencing judges exercise a wide discretion in the types of evidence they may consider when imposing sentence and that highly relevant-if not essential-to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Pepper v. United States , 562 U.S. 476, 480, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011). The principle set forth in Pepper and § 3661 requires that the district court be able to consider the most recent evidence of a defendant's life and characteristics, which may be the most probative information available, when deciding whether a defendant should continue to be *234 incarcerated or, in some cases, be immediately released.
While Pepper pertained to the imposition of a new sentence on remand, it is notable that § 404(b), the operative clause of the First Step Act, uses the construction "impose a reduced sentence," rather than merely "reduce" or "modify."[8] Section 3553(a) is triggered whenever a district court "impose[s] a sentence." See 18 U.S.C. §§ 3553(a) ("The court, in determining the particular sentence to be imposed, shall consider ...."), 3582(a) ("The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable."). The context surrounding the use of the verb "impose" in the First Step Act suggests that the word-choice was not accidental. Indeed, the single sentence that is § 404(b) uses the verb "impose" twice. The first part of § 404(b) is unequivocal that any motion for relief must be considered by the "court that imposed a sentence for a covered offense." In that instance, "imposed" undoubtedly refers to the imposition of the original sentence, rather than any modification or reduction. Therefore, in order to construe § 404(b) as falling beyond the reach of 18 U.S.C. § 3553(a), the Court would have to give two different meanings to the verb "impose" within the same sentence. Given the proximity of the repetition, the strength of the interpretative principle that "identical words and phrases within the same statute should normally be given the same meaning" is at its zenith.[9] See FCC v. AT & T Inc. , 562 U.S. 397, 408, 131 S.Ct. 1177, 179 L.Ed.2d 132 (2011) (citation omitted).
Some courts have held that because the district court can impose only a "reduced sentence" under the First Step Act, the sentencing proceeding must not be a plenary one, and the term "impose" cannot be given its usual meaning. See, e.g., McKinney , 2019 WL 2053998, at *4 (citing Potts , 2019 WL 1059837, at *3 ). While the restriction on the district court's ability to impose a lengthier sentence could be a relevant factor, the nature of a sentencing cannot be dictated solely by a statutory limit on the sentencing range. Rather, federal criminal statutes almost invariably contain statutory maximums (and occasionally mandatory minimums) that constrain judicial discretion without divesting a sentencing proceeding of its plenary nature.
Moreover, even if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act. Importing the standard set forth in § 3553(a) makes sentencing proceedings *235 under the First Step Act more predictable to the parties, more straightforward for district courts, and more consistently reviewable on appeal. It is unlikely that Congress intended to give district courts unbounded or unreviewable discretion to grant or deny relief, and if § 3553(a) did not apply, then courts would have to develop new and untried standards to limit judicial discretion. See United States v. Christie , 736 F.3d 191, 196 (2d Cir. 2013) ("[T]he need for at least some statement of reasons is fully applicable in the context of a motion for a sentence reduction. Like the initial sentencing decision, resolution of a sentence reduction motion is a discretionary decision regarding the defendant's fundamental liberty interests, which is subject to appellate review."). Rather, the more likely scenario is that Congress intended district courts to apply, by default, existing sentencing standards when exercising their discretion.
The application of § 3553(a) factors to current facts is also more manageable than the alternative, which would require the current sentencing court to reconstruct the original record and to imagine what the original judge would have done had he or she not been bound by the then-applicable mandatory minimum sentence. First, given the length of the sentences at issue in crack-cocaine cases, there is a high degree of likelihood that many of the judges considering the First Step Act motion will not be the original sentencing judge. See, e.g., Martin , 2019 WL 1558817, at *4. The court would, therefore, have to predict how another judge would have ruled more than a decade ago, which may be impossible to do depending on the level of detail in the previous judge's explanation of the original sentence. Second, given the passage of time and changes to record retention methods, the current court may have difficulties re-creating the exact record that was before the original judge. Third, because the original sentences in these cases were largely dictated by the high mandatory minimums, defense counsel may have prioritized or raised different arguments than he or she would have if the defendant had been subject to a lower mandatory minimum sentence or no mandatory minimum at all. In other words, the frozen-in-time approach would require a district court to exercise discretion based on a record that was not created with the current statutory framework in mind.
In Pepper , the Supreme Court considered the fairness vel non of allowing defendants to benefit from renewed consideration of the § 3553(a) factors. In that case, the Supreme Court acknowledged that consideration of post-sentencing rehabilitation "may result in disparate treatment" between defendants who receive reconsideration during resentencing and defendants who are only sentenced once. 562 U.S. at 502, 131 S.Ct. 1229. Nevertheless, the Supreme Court discounted the significance of that disparity because the disparity did not arise arbitrarily but as a product of "the ordinary operation of appellate sentencing review." Id. Here, to the extent that there is any disparity, it arises from Congress's decision to pass a law that affects only a subset of incarcerated persons. Additionally, consideration of post-sentencing evidence does not always benefit the defendant, as the sentencing court could also consider evidence of bad acts occurring after the defendant was originally sentenced. As such, there is nothing inherently inequitable about considering the full range of the defendant's history and characteristics.
For those reasons, the Court holds that consideration of post-sentencing factual developments is appropriate under § 404 of the First Step Act.
C. Defendants' Motions for Relief
Having determined that Defendants are eligible for relief and having *236 defined the scope of this Court's consideration, all that remains is a decision on the merits of Defendants' motions for relief pursuant to § 404 of the First Step Act. For the reasons stated at Mr. Rose's hearing on May 13, 2019, in light of his abysmal prison disciplinary record, the Court is holding Mr. Rose's motion in abeyance until September 19, 2019, when Mr. Rose is due to re-appear before this Court. Dkt. 408. As to Mr. Robinson, for the reasons set forth below, the Court finds that he should be sentenced to time served, which, as of the date of this Order, is the equivalent of 15 years, four months, and three days, plus a reasonable number of days (not to exceed ten) needed by the Bureau of Prisons to process his release.
Mr. Robinson argues that his imprisonment for the past fifteen-plus years is sufficient punishment for his offenses. Dkt. 409. Defense counsel notes that Mr. Robinson was only 18 when the drug conspiracy began and only 23 when arrested as a relatively low-level (albeit prolific) drug dealer. Id. at 1. Mr. Robinson has now spent the vast majority of his adult life behind bars. While Mr. Robinson has incurred a number of disciplinary infractions, he has incurred none in more than two years. Id. at 4. The Government also acknowledges that most of Mr. Robinson's infractions "do not appear to be particularly serious" or violent. Dkt. 412 at 3. Meanwhile, Mr. Robinson has completed courses in real estate, writing, and other subjects and has developed job skills by working in food service and on other job assignments. Dkt. 409 at 4.
The Government's only argument against granting relief is that, had the Fair Sentencing Act of 2010 been in effect in 2005, the Government "undoubtedly ... would have charged [Mr. Robinson] with 280 grams of crack, and the jury would have found him responsible" for over 280 grams of crack cocaine. Dkt. 400 at 5. The Court cannot simply assume that the Government would have been successful in proving an indispensable element of a criminal offense. Moreover, the Government in this case had charged the defendants with conspiring to distribute 1.5 kilograms of crack cocaine, before filing a superseding indictment that charged defendants with conspiracy to distribute only 50 grams. Compare Dkt. 82 at 14 with Dkt. 109 at 3. While the Government can argue that a change in quantity would not have made a difference at trial, one could also hypothesize that the Government did not proceed to trial on a larger quantity because proving a larger quantity would have been more difficult-which is further illustration that historical revisionism is an inappropriate judicial exercise. Granting relief here does not, as the Government contends, create "unwarranted sentencing disparities," Dkt. 400 at 5, because the comparison group consists of other defendants charged with and convicted of distributing or conspiring to distribute 50 grams or more of crack cocaine. Whatever "disparity" that results is the remedy that Congress intended when it passed the First Step Act.
After reviewing all of the relevant facts in this case, including Mr. Robinson's original and supplemental presentence reports and the parties' submissions, including Mr. Robinson's letter to the Court and the most recent disciplinary, employment, and education records from the Bureau of Prisons, and considering all of the relevant factors set forth in 18 U.S.C. § 3553(a), the Court finds that an aggregate sentence of time served, amounting to 184 months and three days, plus a reasonable number of days (not to exceed ten) needed by the Bureau of Prisons to process his release, is sufficient and not longer than necessary to achieve the goals of sentencing for Mr. Robinson.
*237 III. CONCLUSION
For the foregoing reasons, Defendant Junior Robinson's motion for a reduced sentence of time served is GRANTED pursuant to § 404(b) of the First Step Act. The Bureau of Prisons is authorized to delay execution of this Order for up to ten days after its issuance so that the Bureau may make necessary arrangements related to Mr. Robinson's release. The Bureau of Prisons is directed to proceed as expeditiously as possible so as to avoid any unnecessary delay. An amended judgment shall issue forthwith. The Clerk of Court is respectfully directed to terminate docket entry 409.
SO ORDERED.

Defendants were also charged with conspiracy to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D). Dkt. 109 at 3. That aspect of their conviction is not relevant to this opinion.

Of course, if the mandatory minimums that were put in place by the Fair Sentencing Act had been operative at the time of the trial in this case, it seems likely that the jury would have been asked to consider whether the defendants were responsible not for 50 grams or more of crack cocaine but 280 grams or more of crack cocaine. Nevertheless, this Court may not, as the Government suggests, presume or conclude that the jury would have found beyond a reasonable doubt that defendants were responsible for the greater quantity.

The only exceptions were defendants who had been convicted of crack cocaine offenses but had not been sentenced before August 3, 2010. The Supreme Court has previously determined that those defendants were eligible for relief under the Fair Sentencing Act. See Dorsey , 567 U.S. at 281, 132 S.Ct. 2321. The First Step Act could not have been intended to be duplicative of the Fair Sentencing Act.

At the five year mandatory minimum level, the Government's interpretation would limit eligibility for relief to individuals found responsible for distributing more than 5 but less than 28 grams of crack cocaine.

According to a report by the United States Sentencing Commission, "courts often sentence [ ] offenders to the statutory mandatory minimum term of imprisonment regardless of the applicable guideline range." U.S. Sentencing Comm'n, An Overview of Mandatory Minimum Penalties in the Federal Criminal Justice System 47 (July 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170711_Mand-Min.pdf (last visited May 17, 2019). Indeed, offenders who are subject to a mandatory minimum sentence, which is most commonly associated with controlled substance offenses, are the "most likely to receive a non-government sponsored below range sentence." Id. at 11, 47.
Recent statistics show that, in the Southern District of New York, only 21% of defendants in drug trafficking cases receive a sentence that is within or above guideline range; nationally, that figure is higher, but is still only 35%. U.S. Sentencing Comm'n, Statistical Information Packet Fiscal Year 2017, State of New York 18, Table 10 (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2017/ny17.pdf (last visited May 17, 2019). Thus, for the vast majority of defendants in drug-trafficking cases, and particularly for those in this district, the Guideline range does not appear to have a significant impact on the eventual sentence. Accordingly, defendants have relatively little incentive to dispute the Government's position regarding the quantity of drugs for which the defendant is responsible and much greater incentive to focus their sentencing arguments on mitigating factors that will result in a sentence as close to the mandatory minimum as possible.

Some courts have held that the district court's authority under the First Step Act should be narrowly construed because of the language in § 3582(c)(1)(B), which allows modifications to the extent "expressly permitted by statute." See, e.g., United States v. McKinney , No. 06-CR-20078, 2019 WL 2053998, at *4 (D. Kan. May 9, 2019) ; Davis , 2019 WL 1054554, at *2. Applying what would effectively be a clear-statement rule, one could argue that the First Step Act does not authorize consideration of § 3553(a) factors because § 404 does not specifically reference § 3553(a). That reading of § 3582(c)(1)(B), however, is more restrictive than the Second Circuit's interpretation. According to the Second Circuit, "[r]ather than mandating the use of explicit terms like 'resentencing' or 'correction of a sentence' before a term of imprisonment can be modified, § 3582(c)(1)(B) [should] be read as requiring only that a statute contain an express grant of remedial power, and that this power be broad enough to permit the resentencing in question." See Triestman , 178 F.3d at 629. Under that rationale, the First Step Act's grant of remedial power need not affirmatively reference the § 3553(a) factors before the district court can appropriately consider them-the grant need only be capacious enough to allow for their consideration.

In this case, the Court need not decide the broader question of whether the First Step Act requires or authorizes a plenary resentencing. Neither party raises any sentencing arguments unrelated to the crack-cocaine mandatory minimum other than post-sentencing disciplinary and rehabilitation evidence. Additionally, in terms of Defendants' required presence, Mr. Rose has appeared at his hearing before this Court and will appear again at the adjourned proceeding. As to Mr. Robinson, the Court is granting his requested relief; neither side has requested a hearing or Mr. Robinson's presence, and given the Court's disposition of his motion, requiring Mr. Robinson to be transported to this district for a hearing will actually prolong his incarceration.

The distinction between "impose" and "modify," as the terms are used in sentencing statutes, is well-recognized. For instance, under 18 U.S.C. § 3582, subsection (a) applies whenever the court may be "imposing a term of imprisonment" and directs the sentencing court "to consider the factors set forth in section 3553(a)." Subsection (b) provides that a sentence, once imposed, "can subsequently be" "modified" or "corrected" under certain circumstances. Subsection (c) further delineates the circumstances under which the sentencing court may "modify a term of imprisonment once it has been imposed."

Additionally, in § 404(c), the First Step Act uses "imposed" and "reduced" as contrasting alternatives, which suggests that Congress recognized the distinction between the two when drafting the legislation. See Corley v. United States , 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").