**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

EZRALEE J. KELLEY,
*Defendant-Appellant.*

No. 19-30066

D.C. No.
2:06-cr-00136-LRS-2

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted March 5, 2020
Seattle, Washington

Filed June 15, 2020

Before: Sandra S. Ikuta and Ryan D. Nelson, Circuit
Judges, and Solomon Oliver, Jr.,[*] District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for
the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming the sentence imposed on a motion for a reduced sentence, the panel held that the First Step Act of 2018 does not permit a plenary resentencing proceeding in which a defendant's career offender status can be reconsidered.

The panel explained that the First Step Act permits the court to sentence as if parts of the Fair Sentencing Act of 2010 had been in place at the time the offense occurred, not as if every subsequent judicial opinion had been rendered or every subsequent statute had been enacted. The panel concluded that the district court in this case properly exercised its discretion when it applied the applicable laws that existed when the defendant's covered offense was committed, as if the Fair Sentencing Act was also in existence, resulting in a recalculated Sentencing Guidelines range of 188 to 255 months, and in imposing a reduced term of imprisonment of 180 months at the second step of resentencing.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Matthew Campbell (argued), Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for Defendant-Appellant.

Richard Barker (argued), and Russell E. Smoot, Assistant United States Attorneys; William D. Hyslop, United States Attorney; United States Attorney's Office, Spokane, Washington; for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

This appeal requires us to address whether the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), permits a plenary resentencing proceeding in which a defendant's career offender status can be reconsidered. We hold that it does not.

I

In 2010, Congress enacted the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010), to reduce the disparate treatment of offenders who dealt crack cocaine compared to offenders who dealt powder cocaine, *see Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). Before the Fair Sentencing Act, an offense involving 50 or more grams of crack cocaine would be subject to a statutory sentencing range of 10 years to life in prison, 21 U.S.C. § 841(b)(1)(A)(iii) (2006), and an offense involving 5 or more grams of crack cocaine would be subject to a statutory

sentencing range of 5 to 40 years in prison, 21 U.S.C. § 841(b)(1)(B)(iii) (2006). Section 2 of the Fair Sentencing Act amended these sections so that a higher quantity of drugs would be needed to trigger the same sentences; thus, an offense involving 280 or more grams (rather than 50 or more grams) of crack cocaine was subject to a sentence of 10 years to life in prison, and an offense involving 28 or more grams (rather than 5 or more grams) of crack cocaine was subject to a sentence of 5 to 40 years in prison. *See* Fair Sentencing Act § 2.[1]  These changes did not apply to offenders whose convictions became final before Congress enacted the Fair Sentencing Act. *See Dorsey*, 567 U.S. at 280–81.

Eight years after the Fair Sentencing Act, Congress enacted the First Step Act to implement various criminal-justice reforms. Section 404 of the First Step Act addresses how the Fair Sentencing Act applies to offenders whose sentences were final before Congress enacted the Fair Sentencing Act. It states, in pertinent part:

> A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.

First Step Act § 404(b). A covered offense is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." First Step

---

[1] Section 3 of the Fair Sentencing Act eliminated mandatory minimum sentences for simple possession of crack cocaine.

Act § 404(a).  Section 404(c) provides that a court's decision to reduce a sentence under the First Step Act is discretionary, stating that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section."  First Step Act § 404(c).[2]  In other words, the First Step Act permits a defendant who was sentenced for a crack cocaine offense to move the court to "impose a reduced sentence as if" the First Step Act had been in effect at the time the defendant committed the offense, and it gives the district court discretion to do so.

## II

In 2007, three years before the Fair Sentencing Act was enacted, Ezralee Kelley pleaded guilty to one count of conspiracy to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (2006). Her offense involved 262.2 grams of a mixture containing 162.5 grams of cocaine base. In the plea agreement, the government and Kelley agreed that an appropriate sentence would range from 180 to 262 months in prison followed by five years of supervised release.

---

[2] Section 404(c) provides, in full:

> LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.  Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

The United States Federal Sentencing Guidelines are the "starting point and the initial benchmark" for the sentencing process. *Gall v. United States*, 552 U.S. 38, 49 (2007). Before Kelley was sentenced, the probation officer prepared a Presentence Investigation Report (PSR), which proceeded through the steps required by the then-current 2006 Guidelines. *See* U.S.S.G. § 1B1.1 (2006) (Application Instructions).

Pursuant to the Guidelines, the PSR first determined that the applicable offense Guideline was § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking). *See* U.S.S.G. § 2D1.1 (2006). Applying this Guideline, the PSR calculated Kelley's offense level, that is, the number of points associated with Kelley's criminal activity. Based on the quantity of cocaine base involved, Kelley's base offense level (as determined by reference to the Drug Quantity Table) was 34. *See* U.S.S.G. § 2D1.1(c)(3) (2006).

The PSR then calculated the applicable adjustments to the base offense level. Because of Kelley's acceptance of responsibility, the base offense level was adjusted downward by three points. *See* U.S.S.G. § 3E1.1 (2006). This gave her an adjusted offense level of 31.

Next, the PSR determined applicable adjustments under Chapter 4. *See* U.S.S.G. § 4 (2006) (Criminal History and Criminal Livelihood). Kelley had two Washington convictions for conspiracy to distribute a controlled substance. *See* Wash. Rev. Code §§ 69.50.407, 69.50.401(A). These offenses, combined with her federal conviction and age, made her a career offender within the meaning of

U.S.S.G. § 4B1.1 (2006).**³**  Under Chapter 4, a career offender who commits a crime with a statutory maximum sentence of life imprisonment automatically has an offense level of 37 before accounting for any acceptance of responsibility adjustment.  U.S.S.G. § 4B1.1(b) (2006).  Because the statutory maximum for Kelley's offense of conviction was life in prison at that time, she was assigned an offense level of 37.  After reducing Kelley's offense level by three points for acceptance of responsibility, the PSR determined that Kelley had a total offense level of 34.

The PSR then determined Kelley's criminal history category under Chapter 4.  This category is determined by adding points for each qualifying prior sentence according to the instructions in U.S.S.G. § 4A1.1 (2006).  Kelley's record would have put her in Criminal History Category IV.  But as a career offender, Kelley was automatically assigned to Category VI.  U.S.S.G. § 4B1.1(b) (2006).

Finally, the PSR applied the Sentencing Table, U.S.S.G. Chapter 5, Part A (2006).  Based on Kelley's total offense level of 34, her assignment to Criminal History Category VI,

---

**³** Section 4B1.1 provides:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1 (2006).

and the statutory mandatory minimum, the Guidelines range was 262 to 327 months of imprisonment. The PSR also stated that the parties had agreed to a sentence between 180 and 262 months in the plea agreement. Neither party objected to the PSR.

The district court adopted the PSR but imposed a below-Guidelines sentence of 192 months in prison followed by five years of supervised release. The court stated it was imposing a below-Guidelines sentence within the "range expressly permitted by [the] terms of [the] Plea Agreement" based on its consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

After the First Step Act was enacted in 2018, Kelley moved for a reduced sentence. Kelley argued that under the Fair Sentencing Act's revised sentencing ranges, her offense involving 262.2 grams of a mixture containing crack cocaine would subject her to 5 to 40 years in prison, instead of 10 years to life. *See* 21 U.S.C. § 841(b)(1)(B)(iii). Relying on the 2018 Guidelines, which were applicable in 2019, Kelley argued that her recalculated base offense level (as determined by reference to the Drug Quantity Table) was 28, rather than 34. *See* U.S.S.G. § 2D1.1(c)(6) (2018). Further, Kelley argued that under a recent Ninth Circuit opinion, the two prior Washington offenses giving rise to her career offender status, Wash. Rev. Code §§ 69.50.407, 69.50.401(A), no longer qualified as career offender predicates, *see United States v. Brown*, 879 F.3d 1043, 1047–48 (9th Cir. 2018) (holding that because the Washington drug conspiracy statute covers conduct that would not be covered under federal conspiracy law, Washington drug conspiracy is not a "controlled substance offense" under the Guidelines). Therefore, she argued, she was not a career offender and not

subject to any upward adjustment based on career offender status.  Kelley then argued that with a three level reduction for acceptance of responsibility, her adjusted offense level would be 25.  Because she would no longer be designated as a career offender, she would retain the Criminal History Category IV, instead of being automatically assigned to Criminal History Category VI.  With an adjusted offense level of 25 and a Criminal History Category of IV, the Sentencing Table would give her a Guidelines range of 84 to 105 months. *See* U.S.S.G. Chapter 5, Part A (2018).  Because Kelley had already served in excess of that time, she asked for immediate release.

The district court rejected this argument in part.  First, the district court concluded the First Step Act did not give it authority to conduct a plenary resentencing or reconsider its original sentencing determinations.  Therefore, the court recalculated Kelley's Guidelines range as if the Fair Sentencing Act had been in effect when she was originally sentenced but without considering other changes in the law. According to the court, Kelley's recalculated Guidelines range dropped from 262–327 months to 188–235 months. Taking into account Kelley's evidence that she had been a model inmate during her incarceration as a factor under 18 U.S.C. § 3553(a)(1), the district court exercised its discretion to impose a reduced term of imprisonment of 180 months.[4]  Like Kelley's original sentence, this term was below Kelley's Guidelines range but within the range agreed

---

[4] Because neither party challenges the district court's consideration of the § 3553(a) factors, we do not address this issue. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

to by Kelley and the government in Kelley's plea agreement. Kelley appealed.[5]

## III

The only question on appeal is whether the First Step Act authorizes a plenary resentencing. In other words, the parties dispute whether a court exercising its discretion to resentence a defendant under the First Step Act has the authority to revisit all aspects of the defendant's sentence and apply current law, including our determination in *Brown* that Kelley's two Washington drug offenses are not career offender predicates.[6]

As always, we start with the statute's plain language. The First Step Act gives a court discretion to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). The phrase "as if" means "as the case would be if" some different condition had been in existence, e.g., "he laughed as if I had said something annihilatingly funny." *As*, Oxford Dictionary of English (3d ed. 2011), https://www.oed.com/view/Entry/11307#eid

---

[5] Although Kelley is now out of prison, her appeal is not moot because her sentence includes five years of supervised release, a term that could be reduced by a ruling in her favor on appeal. *See United States v. Verdin*, 243 F.3d 1174, 1178 (9th Cir. 2001).

[6] The government does not dispute that if the district court could consider all current law, Kelley would not be considered a career offender, *see United States v. Brown*, 879 F.3d 1043, 1046 (9th Cir. 2018), and her base offense level under the Guidelines would be 28, *see* U.S.S.G. § 2D1.1(c)(6) (2018).

38318876.   In other words, the phrase "as if" requires consideration of a counterfactual situation.

The First Step Act describes the counterfactual situation as follows:  At the time the defendant committed the covered offense, sections 2 and 3 of the Fair Sentencing Act were in effect.  First Step Act § 404(b).  In other words, the First Step Act authorizes the district court to consider the state of the law at the time the defendant committed the offense, and change only one variable:  the addition of sections 2 and 3 of the Fair Sentencing Act as part of the legal landscape.  *See United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019) (interpreting the First Step Act as authorizing a district court to decide "on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act").  With this counterfactual situation in mind, the court must then determine how changing this single variable would affect the defendant's sentence.  Then the court may exercise its discretion to impose a reduced sentence consistent with that change.

Because the First Step Act asks the court to consider a counterfactual situation where only a single variable is altered, it does not authorize the district court to consider other legal changes that may have occurred after the defendant committed the offense.  In other words, the First Step Act permits the court to sentence "as if" parts of the Fair Sentencing Act had been in place at the time the offense occurred, not "as if" every subsequent judicial opinion had been rendered or every subsequent statute had been enacted.

Accordingly, we hold that a district court that decides to exercise its discretion under the First Step Act must:

(1) place itself in the counterfactual situation where all the applicable laws that existed at the time the covered offense was committed are in place, making only the changes required by sections 2 and 3 of the Fair Sentencing Act; and (2) determine the appropriate sentence under this counterfactual legal regime.

In reaching this conclusion, we deepen a circuit split. We join the well-reasoned opinions of the Fifth and Sixth Circuits, which have interpreted the First Step Act as not permitting a plenary resentencing hearing but instead allowing a court to engage in the limited counterfactual inquiry we have described. *See Hegwood*, 934 F.3d at 418; *United States v. Smith*, 958 F.3d 494, 498 (6th Cir. 2020). The Fourth Circuit, by contrast, has concluded that the First Step Act permits a court to consider at least some intervening changes in case law in recalculating a prisoner's sentence. *See United States v. Chambers*, 956 F.3d 667, 672–73 (4th Cir. 2020). Despite recognizing that the "as if" clause "directs the sentencing court to apply section 2 or 3 of the Fair Sentencing Act, and not some other section, or some other statute," *Chambers* nevertheless held that "there is no limiting language to preclude the court from applying intervening case law," and therefore a court is free to consider intervening changes in case law in recalculating a prisoner's sentence. *Id*. at 672.[7] We reject this conclusion because it

---

[7] The Fourth Circuit distinguished *Hegwood* and further justified its conclusion that its intervening case law, *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), applied in the First Step Act resentencing on the ground that *Simmons* applied to cases pending on collateral review. *See Chambers*, 956 F.3d at 669 (citing *Miller v. United States*, 735 F.3d 141, 146 (4th Cir. 2013)). Given that the applicability of precedent to habeas proceedings is not relevant to a sentence reduction under the First Step Act, we find this reasoning unpersuasive.

fails to account for the First Step Act's "limiting language," namely, the "as if" clause, which expressly limits the scope of the counterfactual situation a court may consider. Neither the First Step Act, nor any other statute identified by *Chambers*, authorizes a court to reduce a sentence "as if" changes in law other than sections 2 and 3 of the Fair Sentencing Act had been in effect; therefore, a court has no authority to do so. *See* 18 U.S.C. § 3582(c).

IV

In opposing this conclusion, Kelley raises two primary arguments.

A

First, Kelley argues that a proper analysis of 18 U.S.C. § 3582(c), which addresses modifications of imposed terms of imprisonment, leads to the conclusion that the First Step Act requires plenary resentencing. Section 3582(c) provides that a court generally may "not modify a term of imprisonment once it has been imposed," subject to certain exceptions, two of which are relevant here. The first exception, § 3582(c)(1)(B), states that "the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."[8] The second exception, § 3582(c)(2), states that if a defendant "has been sentenced to

---

[8] Subject to certain requirements, Rule 35 of the Federal Rules of Criminal Procedure authorizes a court to correct an error in sentencing that "resulted from arithmetical, technical, or other clear error," Fed. R. Crim. P. 35(a), and to reduce a sentence when the defendant has provided substantial assistance to the government, Fed. R. Crim. P. 35(b).

a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," then the court may reduce the term of imprisonment "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Kelley's argument proceeds in several steps. First, Kelley argues that the First Step Act is not a stand-alone statute, but is implemented through § 3582(c)(1)(B). Second, Kelley argues that because § 3582(c)(2) contains language permitting a court to apply a Guidelines change to previously sentenced offenders only when the Sentencing Commission issues an applicable policy statement, and § 3582(c)(1)(B) contains no such language, we should read § 3582(c)(1)(B) as requiring a plenary resentencing. Therefore, Kelley concludes, the First Step Act also requires plenary resentencing.

We reject this argument because § 3582(c)(1)(B) does not "implement" the First Step Act. Although both § 3582(c) and the First Step Act relate to a court's authority to revise sentences due to changes in the law, § 3582(c)(1)(B) is a general provision which merely acknowledges that courts may modify sentences "to the extent otherwise expressly permitted by statute" or rule. By contrast, the First Step Act expressly permits a specific type of sentence reduction, and we interpret and implement such an independent congressional enactment on its own terms. *See Morton v. Mancari*, 417 U.S. 535, 550–51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled . . . by a general one."). Moreover, we disagree with Kelley's argument that § 3582(c)(1)(B) requires a plenary resentencing. Because § 3582(c)(1)(B) merely authorizes a court to implement another statute allowing for

a sentence modification, it does no more than point us back to where we began: the First Step Act's text, which does not permit a plenary resentencing.

B

Second, Kelley argues that the use of the word "impose" in the First Step Act's statement that a district court may "*impose* a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed," First Step Act § 404(b) (emphasis added), signals Congress's intent to permit a plenary resentencing. According to Kelley, whenever a court imposes a sentence, it is required to make certain determinations based on the Sentencing Guidelines and statutory law. *See* 18 U.S.C. § 3553(a)(4); 18 U.S.C. § 3582(a). Kelley argues that if a court resentences a defendant under the First Step Act but ignores intervening caselaw regarding the construction of the Guidelines, it fails to calculate the applicable Guidelines range correctly. *See Gall v. United States*, 552 U.S. 38, 49 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). Therefore, when a district court "imposes" a sentence under the First Step Act, Kelley argues, it must likewise recalculate the applicable Guidelines range and reconsider the § 3553(a) factors under current law.

We disagree. Although Congress has used the term "impose" in describing the initial imposition of a sentence, Kelley has cited no statute or case establishing that when Congress uses the word "impose" in any resentencing context, Congress necessarily means to authorize a plenary

resentencing.**[9]**     Because "[t]he best evidence of [congressional] purpose is the statutory text," *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991), we are bound by the language of the First Step Act, which plainly indicates that Congress intended to limit courts engaging in resentencing to considering a single changed variable.

In a related context, the Supreme Court rejected the rule that a district court must always consider intervening caselaw whenever it revisits a sentence. *See Dillon v. United States*, 560 U.S. 817, 826 (2010). *Dillon* held that § 3582(c)(2)'s text permitting courts to "reduce the term of imprisonment" consistent with the Sentencing Commission's policy statements, "together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id*. The Supreme Court rejected the argument that the district court should have the discretion to correct "any mistakes committed at the initial sentencing." *Id*. at 831. Because the "aspects of his sentence" that the defendant in *Dillon* sought to correct "were not affected by the Commission's amendment" at issue, they were "outside the scope of the proceeding authorized by § 3582(c)(2), and the District Court properly declined to address them." *Id*. In

---

**[9]** Kelley points to § 3582(c)(1)(B), which permits courts (in certain circumstances) to "modify an imposed term of imprisonment." Kelley claims that the use of "modify" and "imposed" in this section implies that *modifying* a previously imposed sentence is a more limited exercise than *imposing* a sentence in the first place. This argument falls far short of establishing that Congress's use of the term "imposed" necessarily means that Congress intended to require a plenary resentencing notwithstanding the limiting language of the First Step Act. Kelley's reference to other statutes using the term "impose" in the sentencing context, *see* 18 U.S.C. §§ 3553, 3661, are equally unpersuasive.

other words, *Dillon* concluded that congressional authorization to reduce a term of imprisonment does not necessarily carry with it authorization to correct any errors in the original sentencing proceeding.

Relying on this conclusion, *Dillon* adopted a two-step approach to a § 3582(c)(2) resentencing. *Id.* at 827. First, a court determines the Guidelines range applicable "had the relevant amendment been in effect at the time of the initial sentencing," leaving "all other guideline application decisions unaffected." *Id.* (citation omitted). Second, it considers the § 3553(a) statutory sentencing factors and determines, "whether, in its discretion, the reduction . . . is warranted." *Id.* This approach, which requires the court to consider only a single changed variable, is similar to the one we adopt today.

Kelley's argument that any sentencing under the First Step Act must be plenary not only contradicts the statutory text, but also lacks plausibility in context. The import of the First Step Act is to give offenders the benefit of the Fair Sentencing Act, even though their sentences were final before it was enacted. And the point of the Fair Sentencing Act was to lessen the disparity between sentences for crack cocaine offenses and sentences for powder cocaine offenses. But Kelley's interpretation would put defendants convicted of crack cocaine offenses in a far better position than defendants convicted of other drug offenses: The crack cocaine defendants could have their career offender statuses reevaluated, and be eligible for other positive changes in their Guidelines calculations, while other criminal defendants would be deprived of such a benefit. There is no indication in the statute that Congress intended this limited class of crack cocaine offenders to enjoy such a windfall. Further,

Kelley's interpretation would arbitrarily deprive some defendants of the "reduced sentence" the First Step Act permits:  If the court were bound to engage in a plenary reconsideration of all changes in the law, it is possible that the defendant would be subject to a higher Guidelines range, notwithstanding the Fair Sentencing Act's effect.  While the First Step Act does not permit a court to enhance a defendant's sentence, an increased Guidelines range might preclude the court from granting the defendant a reduced sentence.  *See* First Step Act § 404(b).  Our straightforward interpretation better fits the language of the statute and avoids these incongruous results.

V

Given our conclusion that the First Step Act does not authorize plenary resentencing, the district court properly exercised its discretion.  It acknowledged that the First Step Act did not authorize it to conduct a plenary resentencing of Kelley and instead recalculated Kelley's Guidelines range to be 188–235 months.  Although the court did not provide its calculations, this recalculation confirms that the court correctly applied the applicable laws existing when Kelley's covered offense was committed, "as if" the Fair Sentencing Act was also in existence.  Because Kelley's offense involved 262.2 grams of a mixture containing crack cocaine, she would have been subject to 5 to 40 years in prison, instead of ten years to life in prison, had the Fair Sentencing Act been in effect when she was originally sentenced.  Fair Sentencing Act § 2.  This change would not affect her base offense level, which under the version of § 2D1.1 then in effect would have remained at 34.  *See* U.S.S.G. § 2D1.1 (2006).  Nor would the Fair Sentencing Act affect her designation as a career offender.  U.S.S.G. § 4B1.1 (2006).  However, Kelley would

no longer be subject to the automatic adjustment to an offense level of 37 for offenders who commit a crime with a statutory maximum sentence of life imprisonment. *See* U.S.S.G. § 4B1.1(b) (2006). Instead, her offense level would remain at 34. *Id.* (a career offender who commits an offense with a statutory maximum sentence of 25 years or more, but less than life, is subject to an offense level of 34). After her three level downward adjustment for acceptance of responsibility, Kelley's final offense level would be 31. Based on that and her criminal history category of VI, her recalculated Guidelines range would be 188 to 235 months, as the district court determined. The district court then proceeded to the second step of the resentencing and exercised its discretion to impose a reduced term of imprisonment of 180 months. We see no error in the district court's approach.

**AFFIRMED**.