**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 20-6571

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTOPHER LANCASTER,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Malcolm J. Howard, Senior District Judge.  (4:09-cr-00019-H-1)

Argued:  March 9, 2021                    Decided:  May 7, 2021

Before WILKINSON, NIEMEYER, and QUATTLEBAUM, Circuit Judges.

Vacated and remanded by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Quattlebaum joined.  Judge Wilkinson wrote a separate opinion concurring in the judgment.

**ARGUED:**  Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  David A. Bragdon, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

Christopher Lancaster, who was sentenced in 2010 to 180 months' imprisonment for conspiracy to traffic in crack cocaine and cocaine powder, filed a motion in February 2020 under the First Step Act of 2018 to have his sentence reduced to the sentence that would have been imposed had the Fair Sentencing Act of 2010 been in effect at the time of his offense. The district court denied Lancaster's motion, concluding on the merits that it would have imposed the same sentence on him had the Fair Sentencing Act been in effect. The district court did not, however, "recalculate [Lancaster's] Guidelines range" in light of "intervening case law," *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020), and apparently did not consider the factors in 18 U.S.C. § 3553(a) in light of current circumstances. Lancaster argues that had the district court conducted that analysis, he would have received a reduced sentence mainly because he no longer qualifies as a career offender for purposes of sentencing. We agree with Lancaster that additional analysis was required and vacate the district court's order, remanding for further consideration of his motion.

I

In 2009, Lancaster pleaded guilty to one count of conspiracy to distribute or possess with intent to distribute 5 kilograms or more of cocaine powder and 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. The mandatory minimum sentence for that crime was 10 years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2006). Prior to sentencing, the Probation Office prepared a presentence investigation report, which stated

2

that Lancaster was responsible for 6,500 grams of cocaine powder and 11,339 grams of crack cocaine, resulting in a Sentencing Guidelines offense level of 38. The presentence report stated that Lancaster was also a "career offender," as defined in U.S.S.G. § 4B1.2, resulting in an alternative offense level of 37. When Lancaster objected to some drug quantities attributed to him in the presentence report, the district court sustained the objection but did not make its own findings as to drug weight. Instead, it opted to calculate Lancaster's Guidelines range based on his status as a career offender. This, along with a 3-level reduction for acceptance of responsibility, led to a recommended Guidelines range of 262 to 367 months' imprisonment. On January 6, 2010, the court imposed a downward variance sentence of 180 months' imprisonment, which Lancaster is now serving.

Later that same year, Congress enacted the Fair Sentencing Act of 2010, which reduced the sentences for violations of 21 U.S.C. § 841(a) involving crack cocaine and, derivatively, § 846 for conspiracy to violate § 841(a). Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). It did so by raising the quantity of crack cocaine required to trigger § 841(b)(1)(A)(iii)'s 10-year mandatory minimum sentence from 50 grams to 280 grams and the amount required to trigger § 841(b)(1)(B)(iii)'s 5-year mandatory minimum sentence from 5 grams to 28 grams. Thus, after the Fair Sentencing Act, a violation involving 50 grams of crack cocaine would trigger § 841(b)(1)(B)(iii)'s 5-year mandatory minimum sentence.

In 2018, Congress enacted the First Step Act of 2018, § 404 of which made the Fair Sentencing Act sentence reductions retroactive. Pub L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). It did so by authorizing district courts to impose a reduced sentence on

3

specified "covered offenses" as if the Fair Sentencing Act were in effect at the time the offenses were committed. *Id*. § 404(b).

Relying on the opportunity provided by the First Step Act, Lancaster filed a motion in February 2020, requesting that the district court impose a reduced sentence because "he [was] eligible for relief under Section 404 of the First Step Act."

After Lancaster filed his motion, the Probation Office prepared a Sentence Reduction Report, which stated that "the guideline range remains the same and it appears the court would have imposed the same sentence had the Fair Sentencing Act been in effect at the time the defendant was sentenced." Lancaster objected to the report, contending that the Guidelines range would not be the same because, under current law, he no longer qualified as a career offender. Thus, he argued, the district court should calculate his Guidelines range based on drug weight, which, when paired with a variance proportional to the one that the court applied at his sentencing, would result in a sentence of 103 months' imprisonment, 77 months shorter than his original sentence of 180 months' imprisonment. And because he had already served more than 103 months at the time he filed his motion, he requested that his sentence be reduced to time served and that he therefore be released.

The district court denied Lancaster's motion, explaining:

Although the defendant pleaded guilty to a covered offense, the court has considered the defendant's motion on the merits and, in its discretion, denies the motion. Had the Fair Sentencing Act been in effect at the time of his original sentencing, the court would have imposed the same sentence.

From the district court's order dated April 21, 2020, Lancaster filed this appeal.

4

Lancaster's 15-year sentence is now over 11 years old, and in furtherance of the important interest of finality, it generally should not be disturbed.  Indeed, 18 U.S.C. § 3582(c) provides that a court "may not modify a term of imprisonment once it has been imposed."  But that provision also contains exceptions, one of which allows a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute."  *Id*. § 3582(c)(1)(B).  And by enactment of the First Step Act of 2018, Congress provided such an exception, which we now address.  *See United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019) (holding that § 3582(c)(1)(B) is the appropriate vehicle for consideration of First Step Act motions).

Section 404 of the First Step Act authorizes district courts to "impose a reduced sentence" for specific "covered offense[s]."  First Step Act, § 404(b), 132 Stat. at 5222.  And the Act defines a covered offense to be "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010."  *Id*. § 404(a) (citation omitted).  Section 2 of the Fair Sentencing Act, in turn, reduced the sentences for trafficking in crack cocaine by raising the threshold quantity of crack for a 10-year mandatory minimum sentence from 50 grams to 280 grams and the threshold quantity for a 5-year mandatory minimum sentence from 5 grams to 28 grams.  Fair Sentencing Act, § 2, 124 Stat. at 2372; 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii).  Finally, the First Step Act provides that the court "may . . . impose a reduced sentence as if" § 2 of the Fair Sentencing Act "were in effect at the

time the covered offense was committed." First Step Act, § 404(b), 132 Stat. at 5222. But the First Step Act makes clear that such a decision is discretionary. *Id*. § 404(b), (c).

Accordingly, a district court presented with a First Step Act motion to reduce a sentence must first determine whether the sentence qualifies for reduction — i.e., whether it is "eligible" for consideration "on the merits." *United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020) (quoting *Wirsing*, 943 F.3d at 185). This eligibility determination is not a function of discretion but simply of applying the explicit criteria set forth in the First Step Act. *First*, the sentence sought to be reduced must be for a "covered offense" — that is, "a violation of a Federal criminal statute the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, and that was committed before August 3, 2010." First Step Act, § 404(a), 132 Stat. at 5222 (citation omitted). We have concluded that a "covered offense" includes violations under 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii), and (b)(1)(C). *See Wirsing*, 943 F.3d at 186; *Gravatt*, 953 F.3d at 259; *United States v. Woodson*, 962 F.3d at 812, 817 (4th Cir. 2020). *Second*, the motion for a reduction must be addressed to the court that imposed the subject sentence. First Step Act, § 404(b), 132 Stat. at 5222; *cf.* 28 U.S.C. § 2255(a) (requiring that § 2255 motions challenging sentences be made to "the court which imposed the sentence"). And *third*, the sentence must not have been "previously imposed or previously reduced" under the Fair Sentencing Act and must not have been the subject of a motion made after enactment of the First Step Act that was denied "after a complete review of the motion on the merits." First Step Act, § 404(c), 132 Stat. at 5222; *see also Wirsing*, 943 F.3d at 186; *Woodson*, 962 F.3d at 814.

Upon determining that a sentence qualifies for review on the merits, the court is then given discretion to impose a reduced sentence as if the Fair Sentencing Act were in effect at the time the covered offense was committed. First Step Act, § 404(b), 132 Stat. at 5222. The stated policy governing the exercise of this discretion is to bring a sentence that is qualified for reduction "in line" with a sentence that the court would have imposed under the Fair Sentencing Act had it been in effect. *Chambers*, 956 F.3d at 670 (quoting Fact Sheet, Senate Comm. on the Judiciary, The First Step Act of 2018 (S. 3649) — as Introduced (Nov. 15, 2018)).

To determine the sentence that the court would have imposed under the Fair Sentencing Act, the court must engage in a brief analysis that involves the recalculation of the Sentencing Guidelines in light of "intervening case law," *see Chambers*, 956 F.3d at 672; *United States v. Collingon*, No. 19-6721, __ F.3d __, 2021 WL 1608756, at *5 (4th Cir. Apr. 26, 2021), and a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a), *see Chambers*, 956 F.3d at 674; *Collington*, 2021 WL 1608756, at *5; *see also United States v. White*, 984 F.3d 76, 90 (D.C. Cir. 2020) ("Every circuit court that has examined the issue has held that a district court may, or must, consider the 18 U.S.C. § 3553(a) sentencing factors when passing on a motion for relief under section 404 of the First Step Act"). And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing. *See Chambers*, 956 F.3d at 674; *see also, e.g.*, *White*, 984 F.3d at 90 (same); *United States v. Easter*, 975 F.3d 318, 327 (3d Cir. 2020) (collecting cases).

Engaging in this analysis nonetheless leaves the court with much discretion, and the analysis is not intended to constitute a plenary resentencing. *See Chambers*, 956 F.3d at 674; *Collington*, 2021 WL 1608756, at *5, *7. Moreover, the analysis is not intended to be a complete or new relitigation of Guidelines issues or the § 3553(a) factors. Rather, the scope of the analysis is defined by the gaps left from the original sentencing to enable the court to determine what sentence it would have imposed under the Fair Sentencing Act in light of intervening circumstances. If, after conducting the analysis, the court determines that the sentence would not be reduced, then no relief under the First Step Act is indicated.

III

In this case, Lancaster was sentenced for conspiracy to traffic in crack cocaine and cocaine powder, in violation of 21 U.S.C. § 846, a statute for which sentences were modified by the Fair Sentencing Act. *See Gravatt*, 953 F.3d at 259. Lancaster's violation of that statute also occurred before August 3, 2010. Further, Lancaster made his motion to the same court that sentenced him, and this is the first motion that he has made under the First Step Act. Accordingly, he is eligible for discretionary relief under § 404 of the First Step Act — i.e., reconsideration of his sentence in light of the Fair Sentencing Act. This conclusion is not challenged by the parties.

In considering Lancaster's motion "on the merits," the district court denied it, explaining, "Had the Fair Sentencing Act been in effect at the time of his original sentencing, the court would have imposed the same sentence." While such a conclusion might well indicate that no relief should be granted under the First Step Act, it is apparent

8

that in reaching that conclusion, the court did not conduct the appropriate analysis —

understandably, as *Chambers* and our related cases had not yet been decided. That failure,

however, might now prove to be material.

First, the district court did not recalculate the Guidelines sentencing range in light

of "intervening case law." *See Chambers*, 956 F.3d at 672. When the court first sentenced

Lancaster, it sustained his objection to some portion of the amounts of cocaine powder and

crack cocaine attributed to him in the presentence report, and therefore, it elected not to

calculate the Guidelines range based on drug quantity. The court thus made no findings on

drug quantity. Rather, it relied on the fact that Lancaster was a career offender under

U.S.S.G. § 4B1.1 and calculated his Guidelines range on that basis. But since that time,

changes in law indicate that Lancaster cannot now be sentenced as a career offender. The

career-offender enhancement — both in 2009 and now — requires that the "instant offense

of conviction" be, among other things, a "controlled substance offense." U.S.S.G. § 4B1.1.

While at the time of his sentencing Lancaster's instant offense — *conspiracy* to traffic in

crack cocaine and cocaine powder, in violation of 21 U.S.C. § 846 — was considered to

be a controlled substance offense, that is no longer the case. *See United States v. Norman*,

935 F.3d 232, 237–39 (4th Cir. 2019); *see also United States v. Whitley*, 737 F. App'x 147,

149 (4th Cir. 2018) (per curiam) (holding that "§ 846 conspiracy convictions cannot

support" an "enhanced sentencing as a career offender because they are not categorically

controlled substance offenses" within the meaning of the Guidelines); *United States v.

McCollum*, 885 F.3d 300, 303 (4th Cir. 2018). Thus, with no basis to apply the career-

offender enhancement or to apply relevant drug quantities — as those were never

9

calculated — the district court was left, when considering Lancaster's First Step Act motion, with gaps that needed to be filled to calculate an appropriate Guidelines range. *Cf. United States v. Peters*, 843 F.3d 572, 578 (4th Cir. 2016) (noting that "a court deciding a § 3582(c)(2) motion may need to identify the attributable drug quantity with more precision" than at the initial sentencing).

In addition, the district court seemingly did not review the § 3553(a) factors to determine whether its balancing of the factors was still appropriate in light of intervening circumstances. *See Chambers*, 956 F.3d at 674.

In short, to determine whether a sentence under the Fair Sentencing Act would be the same as the sentence previously imposed — as the district court concluded — the court would at least have to conduct this brief analysis, which it apparently did not do. Accordingly, we vacate the district court's order denying Lancaster's motion for relief under the First Step Act and remand for further consideration of his motion in light of this opinion. We do not, however, suggest any outcome on the merits. That rests in the first instance with the district court.

VACATED AND REMANDED

WILKINSON, Circuit Judge, concurring in the judgment:

I agree that *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020), and *United States v. Collington*, No. 19-6721, -- F.3d --, 2021 WL 1608756 (4th Cir. Apr. 26, 2021), together require the application of non-retroactive Guidelines errors in First Step Act resentencings. The majority follows, as it should, those decisions, and I thus join its judgment.

Nevertheless, to say that these holdings exacerbate a circuit split greatly understates the matter. As the Sixth Circuit recently noted, "just one circuit, the Fourth Circuit . . . require[s] district courts to engage in a plenary resentencing under the First Step Act that must account for all changes in law since the original sentencing." *United States v. Maxwell*, 991 F.3d 685, 690 (6th Cir. 2021).

Be that as it may, whatever the Fourth Circuit decides is not going to cause the circuit split to go away. The issue is an altogether serious one in sentencing, and I respectfully suggest that the sooner the Supreme Court resolves the fractured views concerning it, the better off we all will be. My colleagues have ably put forward their understanding of the matter in *Chambers* and *Collington*. I respect their view both on its own terms and as binding circuit precedent, even as I offer this differing perspective.

I.

In *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020), this court reversed a district court that declined to apply a retroactive Guidelines error to an adjusted Guidelines range in a First Step Act resentencing. *Id.* at 668–70; *see also* Pub. L. 115-391, § 404, 132 Stat. 5194, 5222 (2018). Determining the holding of that case should not have required

11

reading between the lines. The court stated it clearly: "[W]e now hold that any Guidelines error deemed retroactive, such as the error in this case, must be corrected in a First Step Act resentencing." *Chambers*, 956 F.3d at 668. Chambers had three predicate convictions that rendered him a career offender. But this court's *en banc* case of *United States v. Simmons* applied retroactively to disqualify two of those predicates. *Id.* at 669 (citing *Simmons*, 649 F.3d 237, 243 (4th Cir. 2011) (en banc); *Miller v. United States*, 735 F.3d 141, 146 (4th Cir. 2013)). Due to this retroactive error, the *Chambers* court found that the defendant could no longer be considered a career offender.

The Guidelines error here differs in kind from the Guidelines error at issue in *Chambers*. Finding conspiracy to traffic in crack cocaine and powder cocaine, in violation of 21 U.S.C. § 846, to be an underlying controlled substance offense for a career offender enhancement was entirely proper at the time of Lancaster's sentencing. Maj. Op., *ante* at 9. Only later was that finding deemed to be erroneous. *United States v. Norman*, 935 F.3d 232, 237–39 (4th Cir. 2019); *United States v. McCollum*, 885 F.3d 300, 303 (4th Cir. 2018). But crucially, the later recharacterization of conspiracy to traffic has never been ruled to be retroactive. Indeed, no one contends otherwise. Thus we are faced with a significant difference that separates the *Chambers* error from the error in this case. The former was held to be retroactive. The error here has concededly not.

*Chambers* could easily have been read to appreciate this difference when it emphasized that the error at issue was retroactive. *See Chambers*, 956 F.3d at 672–73 ("First and foremost, unlike the *Simmons* error in this case, the intervening Fifth Circuit case law that would have removed Hegwood's career-offender enhancement has not been

12

declared retroactive."). This respects the Supreme Court's guidance on retroactivity and limits the nature of First Step Act proceedings. But a subsequent case, *United States v. Collington*, No. 19-6721, -- F.3d --, 2021 WL 1608756 (4th Cir. Apr. 26, 2021), makes that reading more difficult to sustain. There, we found that a district court was "obligated" to impose a reduced sentence. *Id.* at *5, *7. We pronounced that courts within the Fourth Circuit "*must* accurately recalculate the Guidelines sentence range" and that First Step Act resentencings are subject to procedural and substantive reasonableness review. *Id.* (emphasis added). In fastening such requirements on district courts, our circuit, notwithstanding the protestations, has come very close to requiring a plenary resentencing at a more than ten-year remove from the most relevant evidence.

II.

The courts of appeals now differ dramatically in their approaches to interpreting the scope of relief available under the First Step Act. In moving beyond *Chambers*' nuanced balance between finality and error correction, our court has departed from the measured middle of the circuit split to an absolute position quite beyond the First Step Act's reach.

On one end of this circuit split, the Second, Fifth, Ninth, and Eleventh circuits have held that § 404(b) of the First Step Act limits district courts to reducing sentences based on only "the changes mandated by the 2010 Fair Sentencing Act." *See United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019) ("The district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act."); *United States v. Moore*, 975 F.3d 84, 91 (2d Cir. 2020); *United States v. Kelley*, 962 F.3d 470, 475 (9th

13

Cir. 2020); *United States v. Denson*, 963 F.3d 1080, 1089 (11th Cir. 2020). By contrast, other circuits have found that district courts *may* consider intervening law in a First Step Act proceeding but are not required to do so. *See United States v. Concepcion*, 991 F.3d 279, 289–90 (1st Cir. 2021); *United States v. Maxwell*, 991 F.3d 685, 691 (6th Cir. 2021); *United States v. Shaw*, 957 F.3d 734, 742 (7th Cir. 2020); *United States v. Brown*, 974 F.3d 1137, 1145 (10th Cir. 2020).

I believe that in view of both *Chambers* and *Collington* the majority had little choice but to remand this case. We are all bound to respect and follow precedent with which we may disagree. But it is still not amiss to note that any holding that the First Step Act *requires* courts to take into account all intervening case law isolates our court, pushing it past every circuit court and beyond the *Chambers* majority itself. As noted above, *Chambers* defensibly situated the Fourth Circuit in one camp of a circuit split because it required district courts to fix errors that have already been deemed retroactive and did not require courts to fix non-retroactive errors.

But now we are alone. And whether an error is retroactive or non-retroactive is an important distinction that we are not at liberty to ignore. *See generally Teague v. Lane*, 489 U.S. 288 (1989). The distinction runs throughout our legal system. At the most basic level, Article I places constitutional limitations on Congress's ability to enact retroactive legislation. U.S. Const. Art. I, § 9, cl. 3; *id.* § 10, cl. 1. And one of the rudiments of statutory interpretation is the presumption against retroactivity, which is guided by "[e]lementary considerations of fairness." *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994); *cf.* Lon L. Fuller, The Morality of Law (1964). The Supreme Court counsels

14

that Congress must "first make its intention clear" to help "ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Landgraf*, 511 U.S. at 268. Similar considerations take hold in the habeas context, where the fundamental value of finality is balanced against the need to correct retroactively the most serious class of legal errors. The application of new, non-retroactive rules to a final judgment "seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Teague*, 489 U.S. at 309–10. Yet that is where I believe we now are.

## III.

By authorizing district courts to "impose a reduced sentence *as if* sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed," Congress provided courts with discretion over a very narrow field. First Step Act, § 404(b), 132 Stat. at 5222 (emphasis added) (internal citation omitted). The "as if" clause denotes that sentencing courts may change only one variable during resentencings: the corrected drug weights enacted by sections 2 and 3 of the Fair Sentencing Act. *See Kelley*, 962 F.3d at 475. The statute does not state that courts may resentence offenders "'as if' every subsequent judicial opinion had been rendered or every subsequent statute had been enacted." *Id.*

In discarding both the "as if" limitation and the retroactivity limitation, and then compounding the error by transforming a grant of discretion into a mandate, we invite a host of quandaries. District courts will be flooded with requests to litigate factual disputes that predate the passage of the 2010 Fair Sentencing Act. For example, the district court

15

in the instant case now faces the daunting task of determining a drug weight from over ten years ago. *See* Maj. Op., *ante* at 3, 9–10. And there will be the added difficulty of determining what to do with defendants who, unlike Lancaster, failed to object originally to their Guidelines range based on the drug weight because the career offender enhancement rendered the drug weight issue moot. Both district courts and our court will spend years sorting out these and other problems.

Our position portends challenges for prosecutors as well as unintended consequences for defendants. By requiring rules that are non-retroactive to nonetheless be applied, prosecutors may seek harsher sentences and drive harder plea bargains as a protective measure, one that is necessary to guard against ambush from future Guidelines rulings. In Lancaster's case, for example, prosecutors might well have moved for an upward departure based on his extensive criminal history, *see* USSG § 4A1.3, or insisted he plead guilty to the substantive distribution charges if they so much as suspected at the time that his first conspiracy count, at issue here, was in danger of not qualifying as a career offender predicate in the future.

Of course, the interest in finality is subject to abridgment from the Congress. As noted above, *Chambers* could have been reasonably read to apply to retroactive errors, where the interest in finality has already been disturbed. And no one contests that in passing the First Step Act, Congress expressly disrupted the principle of finality by "extend[ing] the cocaine sentencing provisions of the Fair Sentencing Act retroactively." *Chambers*, 956 F.3d at 676 (Rushing, J., dissenting).

16

But we are now extending this principle beyond Congress's intended scope, requiring sentences to be subject to changes that no one could have anticipated and that neither Congress, nor the Sentencing Commission, nor the Supreme Court, nor the Fourth Circuit has made retroactive. The First Step Act performs a specific remedial function. It extends the Fair Sentencing Act's correction of sentencing disparities between crack cocaine offenses and powder cocaine offenses that so often led to racially discriminatory sentencing outcomes. *United States v. Wirsing*, 943 F.3d 175, 176–78 (4th Cir. 2019). This inequity was the distinct ill that Congress drafted § 404(b) of the First Step Act to correct. We now stray from this original purpose, using the Act to confer upon courts the power to encompass all ills the judiciary deems in need of remediation and to dictate to Congress the reach of Congress' own enactment.

*Collington*'s insistence on opening up First Step Act resentencings undoubtedly reflects an urge for a "more compassionate approach to drug sentencing" in general, rather than Congress's tailored legislation on the subject. *Collington*, 2021 WL 1608756, at *10. *Collington* may well of course be right. But not necessarily. Drugs and their attendant ills may be a prime driver of the distress experienced in communities across our country. *See* Stephen J.K. Walters, *Baltimore's Bad Experiment in Law and Disorder*, Wash. Post, Apr. 18, 2021, at C4 ("We know that the gangs supplying these products [drugs] often compete for market share by violent means; their customers sometimes fund their habits with muggings and assaults."). Whichever view one may take of what is a difficult matter is a pure judgment of policy, however, reserved to the legislatures, not the courts.

17

## IV.

Opening up an even larger circuit split ensures that arbitrariness shall surround us on all sides. The arbitrariness results from both time and place. As to time, only certain defendants will reap the benefit of our holding, compounding the unfairness of this wrong turn. Section 404 of the First Step Act applies to defendants who committed covered crack cocaine offenses before August 3, 2010. *See* § 404(a), 132 Stat. at 5222. Thus defendants who committed the same offense *after* August 3, 2010 will not have Lancaster's opportunity to relitigate their career offender statuses. This is not criminal justice. It is arbitrary readjustment, a haphazard windfall for a limited number of crack cocaine offenders. *See Kelley*, 962 F.3d at 478 (noting that applying all intervening law to First Step Act sentence reductions would "put defendants convicted of crack cocaine offenses in a far better position than defendants convicted of other drug offenses. . . . There is no indication in the statute that Congress intended this limited class of crack cocaine offenders to enjoy such a windfall.").

And that is not all. The arbitrariness relates to place as well as time, because the First Step Act entrusts resentencing to the court that imposed the original sentence. § 404(b), 132 Stat. at 5222. It is important that the Guidelines remain, as a matter of simple fairness, as uniform as possible. But the circuit split now magnified means that defendants in one set of circuits will be sentenced under one set of ground rules, defendants in other circuits under another set of ground rules, and defendants in our circuit under yet a third set of criteria. To repeat, arbitrariness now besets us from every angle.

18

## V.

Today's judgment and that of *Collington* set binding precedent we shall all hereafter be obliged to follow. But it is still worth saying one final sad farewell to the art of faithful statutory construction. The consequences of negating congressional intent are by any measure serious. Our holding continues the trend of dumping untold and unjustifiable burdens on district courts, which must now conduct new First Step Act resentencings almost from scratch. It ties up the criminal justice system with these "new" cases and factual inquiries into matters over ten years old, sinking more and more limited resources into the past, even as truly new cases continue to pile up at a rapid rate. In the process, it chisels away the principle of finality, which our highest Court has repeatedly declared a bedrock of any stable criminal justice system. It introduces arbitrariness and unpredictability into an area where evenhandedness should be paramount. At this point, it is impossible to look around and feign surprise that none of our sister circuits have chosen to travel this road beside us. I would embrace this solitude, if that were the price of vindicating a proper interpretation of the First Step Act. I do concede that solitary journeys can require courage. I suggest only to our fine court that the wisdom of others sometimes has its value too.