**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3718
_____

UNITED STATES OF AMERICA

v.

JAVIER HART,
                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:03-cr-00827-001)
District Judge: Hon. Wendy Beetlestone
_____

Argued: October 15, 2020

Before: KRAUSE, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: December 21, 2020)
_____

Christy Martin                                    [ARGUED]
Federal Community Defender Office,
Eastern District of Pennsylvania
601 Walnut Street, Suite 540 West
Philadelphia, PA 19106

    *Counsel for Appellant*

William M. McSwain
Robert A. Zauzmer                                 [ARGUED]
Bernadette A. McKeon
Office of the United States Attorney,
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

The First Step Act is merciful. It lets courts slash some crack offenders' prison sentences. But its mercy is finite. It lets courts lower those sentences only once, even if the first sentence reduction was too stingy because of a mistake.

Thanks to the First Step Act, Javier Hart's sentence was cut from life to thirty-five years. But because of a misunderstanding, he may have left some years on the table. The First Step Act has no further mercy for Hart. But the Government does.

2

Because the error was innocent, it says, we should overlook the Act's limit and give Hart another shot.

The Act's bar on second resentencings is not jurisdictional. So we can and will accept the Government's waiver of that bar. We will vacate Hart's sentence and remand to let him seek a shorter one.

## I. BACKGROUND

### A. The First Step Act

In 2010, Congress raised the amount of crack cocaine needed to trigger various mandatory minimum sentences. Fair Sentencing Act, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372; *Dorsey v. United States*, 567 U.S. 260, 264 (2012). That lowered the mandatory minimums for offenders who fell short of the new thresholds. In 2018, Congress passed the First Step Act, making those new minimums retroactive. Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. That Act does not guarantee anyone a lower sentence. § 404(c). But it does let an eligible prisoner ask the court for a shorter one. § 404(b).

The First Step Act limits prisoners to one bite at the apple: "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with … the Fair Sentencing Act of 2010 …." § 404(c).

### B. Hart's conviction, sentencing, and resentencing

The Act was passed for people like Hart. In 2005, he was convicted of possessing crack cocaine with intent to distribute

3

it. The Federal Sentencing Guidelines recommended imprisoning him for thirty-five years to life. But because of his extensive criminal record and the amount of crack he was caught with, he faced a mandatory minimum sentence of life. That statutory minimum overrode the lower Guidelines recommendation. In 2010, the Fair Sentencing Act lowered the mandatory minimum for Hart's crime to ten years. So when Congress made those lower minimums retroactive in 2018, Hart became eligible for a new, lower sentence.

Many other prisoners were in the same boat. In the Eastern District of Pennsylvania, the U.S. Attorney's Office and Federal Defender's Office quickly formed a screening committee to deal with these cases. Just a few weeks after the law passed, the committee identified prisoners who had become eligible for lower sentences, worked out new sentences for them, and submitted them for the District Court's approval. The committee was able to act so quickly because it thought that eligible inmates could be resentenced only within their new Guidelines range, not below it. It later became clear that this understanding was incorrect.

Hart's revised sentence reflects this misunderstanding. The committee negotiated a new thirty-five-year sentence, at the bottom of his new Guidelines range, and Hart took the deal without asking for a lower sentence. In March 2019, the District Court accepted the agreement and lowered his sentence to thirty-five years.

### C. Hart's quest for an even shorter sentence

As the case law developed, the misunderstanding became clear. So in October 2019, Hart promptly asked the court to lower his sentence more based on the factors in 18 U.S.C. § 3553(a). He argued that he had matured and reformed himself over his sixteen years in prison. The Government opposed his request, arguing that his thirty-five-year sentence was fitting. But because of the misunderstanding about the First Step Act's scope, the Government did not oppose Hart's motion on the ground that he had already gotten one sentence reduction.

The District Court denied Hart's motion. It explained that the First Step Act's purpose was to reduce the sentencing disparity between crack and powder cocaine. But Hart's Guidelines range depended mainly on his criminal history as a career offender, not on the amount of crack he had possessed. The court did not consider the § 3553(a) factors or Hart's personal growth. And even though the Government did not press the point, the court added that Hart had gotten one sentence reduction and could not now get a second one.

### D. Hart's appeal

On appeal, Hart argued that the District Court had to consider the § 3553(a) factors. He was right. After the parties briefed this appeal, we decided *United States v. Easter*, 975 F.3d 318 (3d Cir. 2020). In that case, we said that when a court rules on a First Step Act resentencing motion, it "must consider all of the § 3553(a) factors to the extent they are applicable." *Id.* at 326. That includes the prisoner's "postsentencing rehabilitation." *Id.* at 327 (quoting *Pepper v. United States*, 562

U.S. 476, 491 (2011)). Here, the court did not consider those factors. Once we decided *Easter*, the Government conceded that Hart should win this appeal. It asked us to remand the case for a resentencing in compliance with *Easter*.

But before we can do that, we must ensure that Hart is eligible for *any* further resentencing. As the District Court pointed out, Hart's sentence has already been shortened once under the Fair Sentencing Act's new mandatory minimums. And the First Step Act says: "No court shall entertain a motion … to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the … Fair Sentencing Act …." § 404(c).

That language suggests that Hart should not get any second resentencing. Both Hart and the Government disagree, but for different reasons. Hart says that § 404(c) does not apply to him. The Government says that it does but that its bar is waivable. We agree with the Government. Though the bar's text is inconclusive, its context and the presumption against treating bars as jurisdictional carry the day.

## II. SECTION 404(c) BARS HART'S CLAIM

Section 404(c) covers Hart. It bars a second motion: if a prisoner's sentence has been "previously reduced in accordance with" the Fair Sentencing Act's new mandatory minimums, then a court may not use § 404(b) to reduce his sentence again.

Hart tries to get around this bar. He argues that his sentence was shortened "in accordance with" the 2018 First Step Act, not the 2010 Fair Sentencing Act. We disagree. While it was

6

shortened under the 2018 Act, it was *also* shortened under the 2010 Act. One lowered his mandatory minimum; the other let him enjoy that new minimum retroactively. Because he needed both, the bar applies to him.

### III. WE ACCEPT THE GOVERNMENT'S WAIVER OF § 404(c)

Although the Government wants Hart's sentence to stay the same on the merits, it seeks to waive § 404(c) "in the interests of justice." Gov't Second Suppl. Br. 3. We agree that letting Hart seek another reduction would serve the interests of justice. He lost the chance to lower his sentence by many years because of a misunderstanding. The misunderstanding happened because the Defenders commendably cooperated with the U.S. Attorney's Office to expedite resentencings, before everyone fully understood the law. So we would gladly bless the Government's waiver.

But only if we can. Not all rules are waivable. Some are jurisdictional limits on courts' power and so cannot be waived. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–93 (1982). If § 404(c) deprives courts of jurisdiction to resentence prisoners a second time, then even a waiver cannot empower them to do so.

We hold that § 404(c) is not jurisdictional. A rule is not jurisdictional unless Congress says so "clearly." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006). Congress did not do that here. To start, though the bar eliminates a remedy, it does not end a criminal case entirely. We thus begin with a strong presumption that the rule is not jurisdictional. The remaining evidence does not overcome that presumption. The statutory

7

text is inconclusive, only hinting that the rule might be jurisdictional. Its context suggests that it is not. Because the bar is not clearly jurisdictional, we can accept the Government's waiver.

### A. Because § 404(c) eliminates only one remedy, not an entire case, we strongly presume that it is not jurisdictional

The bar's function strongly signals that it is not jurisdictional. It cuts off only one remedy, a second resentencing under § 404(b) "to modify a defendant's existing sentence." *Easter*, 975 F.3d at 323; *see also United States v. Webb*, 565 F.3d 789, 794 (11th Cir. 2009) (explaining that a resentencing after a Sentencing Guidelines range is lowered is " 'a continuation of a criminal case' rather than a 'civil post-conviction action' like a habeas petition" (quoting *United States v. Fair*, 326 F.3d 1317, 1318 (11th Cir. 2003))). The bar does not destroy the court's power to hear a case. Even if a court applied this bar, it would not end the criminal case; the court could still hear, say, a compassionate-release motion.

Limits on just a remedy normally are not jurisdictional. Traditionally, jurisdiction means a court's power to "proceed *at all* in any cause," not its power to award a particular remedy: "[W]hen [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) (emphasis added). *Cf. Piasecki v. Court of Common Pleas*, 917 F.3d 161, 165–66 (3d Cir. 2019) (suggesting in dictum that 28 U.S.C. § 2254(a), which requires courts to dismiss some habeas proceedings entirely, is jurisdictional). This

8

understanding of jurisdiction dates to the Founding: the Constitution defines our jurisdiction's outer bounds by listing the classes of cases and controversies we have "Power" to hear. U.S. Const. art. III, §2, cl. 1.

To be sure, "Congress is free" to ignore that traditional understanding of jurisdiction and "attach the conditions that go with the jurisdictional label to" other sorts of rules. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). For instance, 16 U.S.C. §3168 bars jurisdiction to grant certain environmental injunctions that "last[ ] longer than ninety days." Those conditions, however, are irregular. Rules that limit only a remedy yet keep a case alive *can* be jurisdictional, but we presume that they are not.

Thus, if a rule limits only a remedy, we will not treat it as jurisdictional without extremely clear evidence. For instance, §3168 is clear enough because it uses the word "jurisdiction." A law that erases a court's "power" to issue a remedy might also be clear enough. But without such explicit language, we will not treat it as jurisdictional.

### B.  The remaining evidence does not overcome the presumption

Because §404(c) limits just one remedy, we strongly presume that it is not jurisdictional. The rest of the evidence does not overcome that presumption. While some of the bar's words hint at jurisdiction, those hints are inconclusive and diluted by its context.

1. *The language is inconclusive*. The bar says that "[n]o court shall entertain" certain second resentencing motions.

§ 404(c). This language is the best evidence that it is jurisdictional. But it is not strong enough.

To start, the use of the active voice, making the "court" the subject, is suggestive but not conclusive. Like many jurisdictional rules, § 404(c) not only says what should happen in a case, but speaks directly to the court. *Cf. Piasecki*, 917 F.3d at 165–66 (discussing a different bar that also speaks directly to the court). That phrasing hints that it limits the court's power. That is just a hint; some rules worded that way are not jurisdictional. Take § 404's statutory parent, the similarly phrased 18 U.S.C. § 3582. It says that sentencing "court[s] may not modify a term of imprisonment once it has been imposed" except under limited conditions (including § 404). § 3582(c). This rule is not jurisdictional. *United States v. Franco*, 973 F.3d 465, 467–68 (5th Cir. 2020); *United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015). *Cf. Dolan v. United States*, 560 U.S. 605, 607–08 (2010) (holding that a mandatory victim-restitution rule providing that "the court shall" finally determine a victim's losses within ninety days is not jurisdictional after the ninety days elapse); *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 914, 916 (4th Cir. 2013) (holding that a False Claims Act rule that "[t]he court shall dismiss an action" based on publicly disclosed information is not jurisdictional).

Congress's choice of verb, "entertain," also is not a clear signal. "To entertain" is not to have power. It means "to give judicial consideration to." *Entertain* (def. 1), *Black's Law Dictionary* (11th ed. 2019). Congress can tell a court not to consider a matter without revoking its power to consider it. A jurisdictional bar might use that word. *See, e.g.*, *Piasecki*, 917

F.3d at 165–66 (dictum treating 28 U.S.C. § 2254(a) as jurisdictional). But many rules using the word are not jurisdictional. *See, e.g.*, 28 U.S.C. § 2255(c) ("A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."). So the bar's language sends only moderate signals that it is jurisdictional.

2. *The context points the other way.* Those signals are eroded by context. When we decide whether a statute's limit is jurisdictional, we must consider its "substantive purpose." *Dolan*, 560 U.S. at 612. Some laws, like the federal habeas statute, try to keep cases out of court "to further the principles of comity, finality, and federalism." *Duncan v. Walker*, 533 U.S. 167, 178 (2001) (internal quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). Not the First Step Act. It made retroactive the Fair Sentencing Act, which "was designed 'to restore fairness to Federal cocaine sentencing.'" *United States v. Jackson*, 964 F.3d 197, 200 n.2 (3d Cir. 2020) (quoting the Act). We doubt that Congress, in the same breath with giving crack offenders fairer sentences, put a limit on that relief that lacked "equitable exceptions" like waiver. *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

In short, § 404(c)'s text is inconclusive and weakened by its statutory context and purpose. That subsection is not clear enough to overcome the strong presumption that its remedial limit is nonjurisdictional.

11

* * * * *

Hart has no right to a second resentencing hearing that complies with *Easter*. But the Government, to its credit, agrees that would be fair. The District Court has jurisdiction to give him a new sentence, and letting Hart seek one would be just. So we accept the Government's waiver and will remand.