**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No.  20-1411

———————

UNITED STATES OF AMERICA

v.

JAMES E. MURPHY, a/k/a JIMMY MURPHY,
a/k/a BLACK,

Appellant

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 1-08-cr-00433-001)
District Judge: Honorable John E. Jones, III

———————

Argued November 17, 2020


Before: AMBRO, BIBAS, and ROTH, Circuit Judges


(Opinion filed:  May 27, 2021)

John F. Yaninek  (Argued)
Thomas Thomas & Hafer
225 Grandview Avenue
Fifth Floor
Camp Hill, PA 17101

                Counsel for Appellant

Daryl F. Bloom
Stephen R. Cerutti, II (Argued)
Eric Pfisterer
Office of United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

                Counsel for Appellee

---

OPINION OF THE COURT

---

**AMBRO**, <u>Circuit Judge</u>

In *United States v. Easter*, 975 F.3d 318 (3d Cir. 2020), we established two goalposts concerning the scope of resentencings under the First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222.  We first held that a district court must consider the sentencing factors in 18 U.S.C. § 3553(a) anew at resentencing. *Id.* at 324.  But we also held that the First Step Act does not "entitle[]" a defendant "to a

2

plenary resentencing hearing at which he would be present." *Id.* at 326. This case requires us to explore the space between the uprights.

Defendant-appellant James Murphy was convicted of two counts of distribution and possession of heroin and cocaine, and the District Court sentenced him to the mandatory minimum of 360 months' imprisonment. This sentence was based in part on the quantity of drugs attributed to him and his designation as a career offender. He later sought a sentence reduction under the First Step Act, arguing that the District Court should reconsider both aspects of his initial sentence. It declined, and Murphy appeals to us.

The District Court correctly refused to reconsider Murphy's attributable drug amounts. But because Murphy was entitled to an accurate calculation of the Guidelines range at the time of resentencing, we still need to know whether he qualified for the career-offender enhancement based on the law as it stood at resentencing. We therefore vacate his sentence and remand for the Court to reconsider it.

## I. BACKGROUND

In 2009, a federal jury convicted Murphy on two counts: (1) conspiracy to distribute and possess with the intent to distribute heroin and 50 grams or more of cocaine base,[1] under

---

[1] "Cocaine base" is cocaine in its chemically basic form (*e.g.*, crack cocaine, coca paste, and freebase), as opposed to cocaine hydrochloride (cocaine powder). *DePierre v. United States*, 564 U.S. 70, 74 (2011). The primary difference is that the body

21 U.S.C. § 846; and (2) distribution and possession with the intent to distribute heroin and 50 grams or more of cocaine base, under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). The jury specifically found that the weight of the cocaine base attributable to Murphy on both counts was 50 grams or more, which triggered the highest mandatory minimum sentence at the time. Each count carried a mandatory minimum sentence of 10 years' imprisonment and a maximum sentence of life.

At sentencing, the Probation Office "conservatively estimated" that Murphy was personally responsible for 595 grams of crack cocaine and 24 grams of heroin. PSR ¶ 12. It also concluded that Murphy qualified for a career-offender enhancement based on prior convictions in Maryland for robbery and second-degree assault. Taking the career-offender designation into account, Probation calculated Murphy's final offense level as 37 with a category VI criminal history. Based on that calculation, the applicable Guidelines sentencing range was 360 months to life. The District Court ultimately sentenced Murphy to 360 months on each count, to be served concurrently, and five years' supervised release.

In 2019, Murphy moved for resentencing under Section 404(b) of the First Step Act. Probation filed an addendum to the presentence report ("PSR") decreasing Murphy's Guidelines sentencing range to 262–327 months, but that calculation preserved the previously attributed drug amounts and the career-offender designation from Murphy's initial sentencing. Murphy objected to both the drug amounts and the career-offender designation. As for the former, Murphy

---

absorbs cocaine base more quickly, thus "producing a shorter, more intense high" than other forms of cocaine. *Id.*

4

argued that the jury had only specifically found that he was responsible for 50 grams of cocaine base instead of the 595 grams in the PSR. And as to the career-offender designation, Murphy contended that his Maryland second-degree assault convictions were no longer predicates for career-offender status under intervening Fourth Circuit precedent.

The District Court overruled both objections, concluding that the First Step Act did not permit reconsideration of either factor on resentencing. However, it acknowledged that Murphy would not have qualified for the career-offender designation in a *de novo* sentencing. Thus, although it declined to remove formally the career-offender status, the Court varied downward from the Guidelines range and sentenced Murphy to 210 months' imprisonment—the high end of the range if the career-offender designation had been formally removed. Murphy now appeals to us.

## II. ANALYSIS[2]

As with all First Step Act cases, we start with the Fair Sentencing Act of 2010. That Act aimed to lessen sentencing disparities between convictions involving crack cocaine and convictions involving powder cocaine. *United States v. Jackson*, 964 F.3d 197, 200 n.2 (3d Cir. 2020). It did this by,

---

[2] The District Court had jurisdiction over the initial criminal proceeding under 18 U.S.C. § 3231. It had jurisdiction to consider Murphy's request for a sentence reduction under 18 U.S.C. § 3582(c)(1)(B) and Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

among other things, increasing the amount of crack cocaine necessary to trigger higher statutory minimum sentences (Section 2) and eliminating mandatory minimums for simple possession (Section 3). Fair Sentencing Act of 2010, Pub. L. No. 111-220, §§ 2, 3, 124 Stat. 2372, 2372; *see also Dorsey v. United States*, 567 U.S. 260, 264 (2012). These changes meant more sentencing discretion for district court judges.

The First Step Act made certain provisions of the Fair Sentencing Act retroactive. Section 404(b) of the former provides that a trial court that has previously sentenced a criminal defendant for certain "covered offenses" may, on motion of the defendant or others, "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. We recently observed that the Act "does not guarantee anyone a lower sentence"—it merely allows "an eligible prisoner to ask the court for a shorter one." *United States v. Hart*, 983 F.3d 638, 639 (3d Cir. 2020). Here, the Government does not dispute that Murphy was convicted of a "covered offense" entitling him to a First Step Act resentencing under § 404. The parties disagree only whether the District Court must have reconsidered Murphy's attributable drug amounts and career-offender status during that proceeding.

We have previously said that we typically review the denial of a request for sentencing modification under the First Step Act for abuse of discretion. *See Easter*, 975 F.3d at 322. But where, as here, a district court's decision rests on a pure question of law, our review is *de novo*. *United States v. Birt*, 966 F.3d 257, 259 n.2 (3d Cir. 2020).

6

## A. Attributable Drug Amounts

Murphy first argues that the District Court should have reconsidered the drug quantity attributable to his offenses at resentencing. However, he does not assert that the Court made any factual errors for the drug quantity.[3] Instead, he contends that the jury's drug-quantity findings are insufficient to support his sentence under *Alleyne v. United States*, 570 U.S. 99 (2013).[4]

In *Alleyne*, the Supreme Court held that "[a]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" and found beyond a reasonable doubt. *Id.* at 103. This means that a jury must find, beyond a reasonable doubt, any drug quantities that increase the mandatory minimum punishment. *See Birt*, 966 F.3d at 262. The jury here found Murphy responsible for 50 grams or more of cocaine base, while he was sentenced based on the 595 grams of cocaine base noted in the PSR. At the time of his

---

[3] The parties disagree on whether Murphy objected to the drug quantity at his initial sentencing, but our conclusion would not change even if he had objected.

[4] Murphy also makes several less compelling arguments. For instance, he argues that § 401 of the First Step Act contemplates a fresh resentencing based on its legislative history. But he was eligible for resentencing under § 404, not § 401. And § 401 applies only to offenses that predate the Act for which a sentence has not yet been imposed. *See* First Step Act of 2018, Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221. We are not persuaded that the purposes behind § 401 transpose to § 404, particularly in light of our holding in *Easter* that § 404 resentencings are not entirely new. *See* 975 F.3d at 326.

trial, a 50-gram finding triggered the highest possible mandatory minimum; however, the Fair Sentencing Act later increased that threshold from 50 grams to 280 grams. *See Dorsey*, 567 U.S. at 269.

At the outset, Murphy does not explain how *Alleyne* changes the outcome in his case, as it appears his conviction complied fully with *Alleyne* under the mandatory minimum thresholds in place at that time. But even assuming he has a plausible explanation, it is unpersuasive for at least two reasons. First, in *United States v. Jones*, the Eleventh Circuit held that a resentencing court "is bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of sentencing," including findings by a district court instead of a jury. 962 F.3d 1290, 1303 (11th Cir. 2020). The Court observed that *Alleyne* requires specific factual findings when those findings increase a defendant's sentence. *Id.* at 1303–04; *see also Alleyne*, 570 U.S. at 103 ("[A]ny fact that *increases* the mandatory minimum is an 'element' that must be submitted to the jury. (emphasis added)). But under the First Step Act a district court may only decrease the sentence or leave it as is. *See* First Step Act § 404(b), 132 Stat. 5194, 5222 (providing that a court "may . . . impose a reduced sentence"); *see also Jones*, 962 F.3d at 1303. We are thus persuaded that *Alleyne* has nothing to say about First Step Act proceedings because there is no danger that a defendant's sentence will increase on resentencing.

Second, § 404(b) of the First Step Act provides that a trial court that has previously sentenced a defendant may, on the defendant's motion, "impose a reduced sentence *as if* sections 2 and 3 of the Fair Sentencing Act . . . were in effect

8

at the time the covered offense was committed" (emphasis added). In *Easter* we interpreted this language to mean that First Step Act does not "entitle[]" a defendant "to a plenary resentencing hearing at which he would be present." 975 F.3d at 326. In so doing, we joined the "clear consensus among our sister circuits" that a First Step Act resentencing is not a "let's start all over." *See id.* (citing cases from the 5th, 6th, 9th, and 11th Circuits for this general proposition). This is because the "as if" provision in § 404(b) permits a district court to consider only the effect of sections 2 and 3 of the Fair Sentencing Act on the defendant's sentence. *See United States v. Moore*, 975 F.3d 84, 91 (2d Cir. 2020).

As we discuss in the following section, a court is still "imposing" a sentence, and it must therefore apply the § 3553(a) factors *as they stand at the time of resentencing*. *Easter*, 975 F.3d at 326 (quoting *United States v. Hegwood*, 934 F.3d 414, 418–19 (5th Cir. 2019)). This new assessment must include any new, relevant facts that did not exist, or could not reasonably have been known by the parties, at the time of the first sentencing (*e.g.*, a defendant's post-sentencing rehabilitation or new health problems). *Id.* at 327. But the resentencing court cannot reach beyond those circumstances to reconsider the facts as they stood at the initial sentencing. Such an approach would make "as if," and what follows, in § 404(b) superfluous. Plus, the *Easter* Court's holding concerning the limited nature of First Step Act proceedings would ring hollow. *See Easter*, 975 F.3d at 326.

We thus join the Eleventh Circuit in holding that a district court is "bound by a previous finding of drug quantity that could have been used to determine the movant's statutory

9

penalty at the time of sentencing."[5] *Jones*, 962 F.3d at 1303. Hence the District Court in our case did not err by not reconsidering Murphy's previous drug-quantity findings.

## B. Career-Offender Enhancement

Murphy next argues that the District Court failed to reconsider his career-offender designation. He stresses that, after his initial sentencing, the Fourth Circuit determined that second-degree assault convictions under Maryland law no longer qualify as predicate offenses to support career-offender status.[6] *See United States v. Royal*, 731 F.3d 333, 342 (4th Cir. 2013). Murphy thus contends that the District Court should have recalculated the Guidelines range—which would include a reconsideration of his career-offender designation in light of the Fourth Circuit's intervening decision—on resentencing.

---

[5] We do not intend to suggest that a resentencing court may never revisit a defendant's attributable drug quantity. We hold only that a resentencing court may not do so if the relevant facts are those depended on by the district court at the first sentencing.

[6] A defendant is a career offender if: (1) he was at least eighteen years old on the date of the current offense; (2) it is "a felony that is either a crime of violence or a controlled substance offense"; and (3) he has at least two previous felony offenses that are either crimes of violence or controlled substance offenses. U.S. Sentencing Guidelines Manual § 4B1.1(a) (U.S. Sentencing Comm'n 2020). Murphy's current offense was a controlled-substance crime, and two of his three previous offenses for second-degree assault under Maryland law were considered crimes of violence at the time of his sentencing. *See Royal*, 731 F.3d at 342.

The Government concedes that Maryland second-degree assaults no longer count toward a defendant's career-offender designation. It maintains, however, that the District Court did not err when it did not reconsider Murphy's career-offender status on resentencing. The text of the First Step Act, the Government posits, permits a resentencing court to consider only how the Fair Sentencing Act affects the defendant's sentence. In other words, a district court conducting a First Step Act resentencing is limited to "considering a single changed variable"—the retroactivity of the minimum sentences in sections 2 and 3 of the Fair Sentencing Act. Government's Br. at 14 (quoting and citing *United States v. Kelley*, 962 F.3d 470, 478 (9th Cir. 2020)).

But, here again, *Easter* controls. We considered there whether a district court must apply the sentencing factors set out in 18 U.S.C. § 3553(a) when imposing a reduced sentence under the Act. *Easter*, 975 F.3d at 320. Despite our holding that the defendant was not entitled to a fresh resentencing hearing, we ruled that the court must consider the sentencing factors anew. *Id.* at 323. We observed that § 3553(a) requires a district court to consider the statutory factors whenever the court is "imposing a sentence." *Id.* at 324; *see also* 18 U.S.C. § 3582(a) (providing that a court "impos[ing]" a term of imprisonment "*shall* consider the factors set forth in section 3553(a) to the extent that they are applicable" (emphasis added)). Further, § 404(b) uses nearly identical language to describe its resentencing proceedings, as it gives initial sentencing courts the power to "impose a reduced sentence" under the Fair Sentencing Act. *Easter*, 975 F.3d at 324. We thus recognized that the text of the First Step Act does more than the Government suggests here—it requires courts to

11

reconsider fully the § 3553(a) factors on resentencing, including any relevant facts that did not exist at the first sentencing. *Id.* at 325–26, 327. In this context, the Government's position cabins too closely what can be considered at resentencing.

In so holding, we again join the Sixth Circuit's conclusion that a resentencing under § 404(b) "includes an accurate calculation of the amended guidelines range *at the time of resentencing* and a thorough renewed consideration of the § 3553(a) factors." *Id.* at 325–26 (emphasis added) (quoting *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020)). Indeed, one of the § 3553(a) factors is the applicable Guidelines sentencing range. *See* 18 U.S.C. § 3553(a)(4)(A). It stands to reason, then, that a "renewed consideration of the § 3553(a) factors" must include an accurate Guidelines calculation "at the time of resentencing." *See Easter*, 975 F.3d at 325–26. In Murphy's case, this means the District Court had to consider whether Murphy qualified as a career offender at that time.

This approach aligns with the broader principles of federal sentencing that we held applied to § 404 proceedings in *Easter*. Section § 3553(a) demands that a district court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set out in § 3553(a)(2). *See Pepper v. United States*, 562 U.S. 476, 491 (2011). Those purposes include "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A), (C). As the Seventh Circuit explained in an analogous context, a change in the applicable Guidelines

12

range "may reflect updated views about the seriousness of a defendant's offense or criminal history." *United States v. Hudson*, 967 F.3d 605, 612 (7th Cir. 2020) (holding that a district court may resentence a defendant under § 404 "with an eye toward current Guidelines" when the Sentencing Commission removed the defendant's burglary convictions from the list of predicate offenses for a career-offender designation) (internal quotation marks omitted). Put differently, a district court potentially could impose a sentence "greater than necessary," in violation of § 3553(a), if it does not accurately calculate the Guidelines range at resentencing. And an accurate calculation necessarily includes a correct determination of whether the defendant is a career offender at that time.[7] *Cf. United States v. White*, 984 F.3d 76, 90 (D.C.

---

[7] In support of his argument, Murphy also urges us to follow the path of the Fourth Circuit in *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020). While our holding appears similar to that in *Chambers*, it rests on different grounds. The *Chambers* Court held that a district court must reconsider a defendant's career-offender enhancement in a First Step Act resentencing, but it emphasized that the intervening case law removing the defendant's career-offender designation was retroactive. *See id.* at 672–73. We do not adopt the *Chambers* Court's approach here, as nothing in the § 3553(a) factors supports a distinction between retroactive and non-retroactive changes to the applicable Guidelines range. We similarly do not adopt the Tenth Circuit's reasoning in *United States v. Brown*, 974 F.3d 1137, 1139–40 (10th Cir. 2020), as that decision rested on the Court's view that the intervening law "clarifie[d]," rather than "amend[ed]," the career-offender provision at issue. What occurred here is a change in law, not the refining of a prior understanding.

Cir. 2020) (endorsing the Seventh Circuit's view that a district court may consider current Guidelines ranges in a § 404 resentencing); *United States v. Harris*, 960 F.3d 1103, 1106 (8th Cir. 2020) (holding that, though a district court is not required to apply current Guidelines, "the § 3553(a) factors in [a] First Step Act sentencing may include consideration of the defendant's advisory range under the current guidelines").

We are mindful that several of our sister circuits have taken the opposite approach. *See, e.g.*, *United States v. Concepcion*, 991 F.3d 279, 290 (1st Cir. 2021) (holding that "a district court may, but need not, consider section 3553 factors" in a First Step Act resentencing, including changes to the defendant's Guidelines sentencing range (internal quotation marks omitted)); *Moore*, 975 F.3d at 92 (holding that the First Step Act "does not obligate a district court to recalculate an eligible defendant's Guidelines range," including reconsideration of a career-offender enhancement); *United States v. Moore*, 963 F.3d 725, 727 (8th Cir. 2020) ("In the First Step Act, Congress does not mandate that district courts analyze the section 3553 factors for a permissive reduction in sentence."); *United States v. Denson*, 963 F.3d 1080, 1089 (11th Cir. 2020) (holding that a district court "is not free to change the defendant's original guidelines calculations that are unaffected by" the Fair Sentencing Act); *United States v. Kelley*, 962 F.3d 470, 475–76 (9th Cir. 2020) (holding that a sentencing court may not "consider other legal changes that may have occurred after the defendant committed the offense," including intervening case law that would remove a defendant's career-offender enhancement); *United States v. Hegwood*, 934 F.3d 414, 419 (5th Cir. 2019) (holding that the First Step Act does not permit district courts to recalculate the Guidelines range, including any changes to the career-offender

14

designation, on resentencing). These decisions largely rest on three distinct arguments, none of which persuades us.

First, most other circuits to address this issue have adopted the Government's current argument that the text of the First Step Act permits the resentencing court to alter only the "single variable" of applying sections 2 and 3 of the Fair Sentencing Act retroactively. *Kelley*, 962 F.3d at 475; *see also Moore*, 975 F.3d at 91; *Hegwood*, 934 F.3d at 418. But we necessarily rejected this narrow approach in concluding that the language in § 404(b) requires district courts to consider fresh the § 3553(a) sentencing factors based on the relevant post-conviction facts as they stand at the time of resentencing. *See Easter*, 975 F.3d at 325–27. As we have explained, Congress did not "legislat[e] on a blank slate" when it used the term "impose" in the First Step Act. *Id.* at 324 (quoting *United States v. Rose*, 379 F. Supp. 3d 223, 233 (S.D.N.Y. 2019)). While the "as if" language read in isolation may permit only the consideration of a single changed variable, Congress did not use that provision in a vacuum. Instead, it chose to pair it with a sentencing term of art that already has its own well-established meaning. *But see Moore*, 975 F.3d at 91 (concluding that "impose" in § 404(b) does not have the same meaning as "impose" in § 3553 because Congress used the term in the former in conjunction with the "as if" language). As with any statute, § 404(b) comes to us as a whole, and we do not leave out unchanged meanings long accorded other parts of that whole. *See United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007).

Second, at least two of our sister circuits have drawn an analogy between First Step Act proceedings and those under 18 U.S.C. § 3582(c)(2). *See Kelley*, 962 F.3d at 478; *Hegwood*,

15

934 F.3d at 418. The latter directly authorizes a court to "reduce" a defendant's sentence "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." In *Dillon v. United States*, 560 U.S. 817, 831 (2010), the Supreme Court held that a defendant could not seek to correct other errors in his sentence under that section beyond any changes in the applicable Guidelines ranges. Our sister circuits have applied *Dillon* by analogy to First Step Act proceedings, seizing on the facial similarity between "reduce" in § 3582(c)(2) and "impose a reduced sentence" in § 404(b). They reason that "congressional authorization to reduce a term of imprisonment does not necessarily carry with it authorization to correct any errors in the original sentencing proceeding." *Kelley*, 962 F.3d at 478.

We agree with this proposition in general—congressional authorization to reduce a sentence is not unbounded. We must look to the text of the authorizing statute. But for us a First Step Act proceeding falls not under § 3582(c)(2), but § 3582(c)(1)(B), which permits a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." *See Easter*, 975 F.3d at 323. That provision looks to other statutes to authorize and limit any modification proceedings under it. *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020) (noting that we must "look to the underlying statute" to determine the extent of a modification under § 3582(c)(1)(B)). And in this context, the other statute that authorizes and limits modifications under § 3582(c)(1)(B) is § 404(b). Hence the relevant statutory text here is § 3582(c)(1)(B) as informed by § 404(b), not § 3582(c)(2).

This matters because the language of § 3582(c)(2) —the only relevant statutory text in *Dillon*—differs significantly from that of § 3582(c)(1)(B) and § 404(b).  Section 3582(c)(2) permits a district court to "reduce" a defendant's sentence based on a changed Guidelines range.  This is a specific, limited function.  Indeed, as the *Dillon* Court noted, the Sentencing Commission's policy statement on subsection (c)(2) specifically directs a district court to "leave all other guideline application decisions," besides the changed Guidelines range, "unaffected."  *Dillon*, 560 U.S. at 831 (quoting U.S. Sentencing Guidelines Manual § 1B1.10(b)(1)).

But § 3582(c)(1)(B) does not provide any similar limitations, providing only that a district court may "modify" a previously imposed sentence "to the extent otherwise expressly permitted by statute."  We thus look to § 404(b), which permits explicitly a court to "impose a reduced sentence as if section 2 and 3 of the Fair Sentencing Act" applied.  And again, we held in *Easter* that "impose" is a term of art that we assume Congress used on purpose.  *See* 975 F.3d at 324–25.  Thus, while "congressional authorization to reduce a term of imprisonment does not *necessarily* carry with it authorization to correct" all errors, *Kelley*, 962 F.3d at 478 (emphasis added), the authorization at issue here is broader than that in *Dillon*.  Section 404(b) authorizes district courts to take into account, at the time of resentencing, any changed circumstances made relevant by § 3553(a).  Our take is that the outcome in *Dillon* was "grounded in" the distinct text of § 3582(c)(2) and therefore does not control the outcome for § (c)(1)(B).  *See Chambers*, 956 F.3d at 671 (quoting *United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019), *as amended* (Nov. 21, 2019)).

17

Third, we acknowledge that our interpretation of § 3582(c)(1)(B) allows only a "limited class" of offenders to benefit from intervening changes in the law. *Kelley*, 962 F.3d at 478. But the First Step Act necessarily singles out this class to benefit from subsequent changes in the law, including the Fair Sentencing Act, because the class initially "bore the brunt of a racially disparate sentencing scheme." *See White*, 984 F.3d at 91. And, as the Second Circuit observed, the First Step Act aimed to "eliminate unwarranted sentencing disparities." *United States v. Davis*, 961 F.3d 181, 191 (2d Cir. 2020). Thus, "if it is unfair to afford some pre-Fair Sentencing Act defendants a procedural opportunity that is unavailable to similar post-Fair Sentencing Act defendants," it would be inconsistent with the First Step Act's "overarching purposes to solve that problem by 'leveling down'—that is, by withholding the opportunity from everyone alike." *Id.*; *see also United States v. Brown*, 974 F.3d 1137, 1146 (10th Cir. 2020). In any case, *Easter* bars this approach by requiring a new Guidelines range calculation at resentencing.

We emphasize that nothing in our holding today constrains a district court's discretion to depart or vary from the Guidelines range as it sees fit. *See Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (noting that the Guidelines "merely guide the district courts' discretion"). As the permissive language in § 404(b) indicates, a sentencing court is free to consider a defendant's changed career-offender status and still retain his previously imposed sentence. *See Easter*, 975 F.3d at 327 (noting that § 404(b) permits, but does not require, a district court to impose a reduced sentence). But the court must begin from an accurate starting point—the proper Guidelines range—in making that determination. *See id.* (holding that a district court "*must* consider the factors Congress has

18

prescribed to provide assurance that it is making an individualized determination" (emphasis added) (internal quotation marks omitted)).

Finally, some of our sister circuits have assumed that any proceeding that permits or requires a district court to consider the § 3553(a) factors anew is necessarily a "plenary" resentencing in violation of the limiting language in § 404(b). *See, e.g.*, *Moore*, 975 F.3d at 90, 91; *Kelley*, 962 F.3d at 477; *Hegwood*, 934 F.3d at 415, 418. But as our twin holdings in *Easter* demonstrate, this is a false dichotomy. A district court may not reach beyond the § 3553(a) factors to reexamine, for example, factual disputes that could have been raised at the defendant's initial sentencing. But the court must make "an accurate calculation of the amended guidelines range at the time of resentencing," which includes a fresh inquiry into whether the defendant qualifies as a career offender. *See Easter*, 975 F.3d at 325. The District Court therefore needed to reconsider formally Murphy's career-offender status.[8]

## C. Harmless-Error Analysis

The Government last argues that even if the District Court erred in failing to reconsider Murphy's career-offender designation, any error was harmless. With the career-offender designation, Murphy's Guidelines range was 262–327 months; without it, his range would decrease to 168–210 months.

---

[8] We note that, although the Government conceded on appeal that Murphy's second-degree assault charges no longer qualify as predicate offenses, we do not reach the ultimate issue of whether Murphy still qualifies as a career offender. We leave that issue for the District Court to consider on remand.

Although the District Court ruled that it could not formally reconsider Murphy's career-offender designation, it varied downward and sentenced Murphy to 210 months "based on what [defense counsel] has sort of glibly indicated as a fake career offender designation." App. at 35. The Court thus sentenced Murphy within the Guidelines range that would have applied had he been a career offender.

But an error in this context is harmless only if "it is highly probable that the error did not prejudice the defendant." *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008) (internal quotation marks omitted). And something is highly probable only when "the court possess[es] a sure conviction." *Id.* (internal quotation marks omitted). Although the District Court technically sentenced Murphy within the Guidelines range for non-career offenders, we do not have a sure conviction that the career-offender sentencing range failed to "affect the sentence actually imposed." *Id.* at 216; *see also Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) ("When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."). Thus we cannot say the error here was harmless, and we must ask the Court to reconsider Murphy's sentence on remand.

* * * * *

Our decision today does no more than navigate the goalposts set by our decision in *Easter*. On one hand, the First Step Act does not permit a district court to conduct a plenary resentencing. *Easter*, 975 F.3d at 326. The District Court in

20

this case correctly declined to reconsider a previous drug-quantity finding. But, on the other hand, the Act requires a court to "impose" a sentence in accord with the § 3553(a) sentencing factors as they stand at the time of resentencing. *Id.* at 327. That means a recalculation that reconsiders Murphy's career-offender designation. We therefore vacate Murphy's sentence and remand the case to the District Court for further proceedings consistent with this opinion.

BIBAS, *Circuit Judge*, dissenting.

Sentences are usually final. Congress has the power to make exceptions to finality; courts should heed their scope. In the First Step Act, Congress authorized district courts to reduce sentences "as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time" of the crime. §404(b). So a court must update the Guidelines range to reflect these new statutory punishments. On that, my colleagues and I agree. But they go further, holding that the resentencing court must *also* update that range to reflect other changes in law. That is more than Congress said.

We are late to the circuit split. All eleven other circuits have taken sides in a three-way conflict. Three have held that a district court *cannot* recalculate the defendant's range from scratch; it can only factor in the new statutory punishments. *Hegwood*, 934 F.3d at 418–19; *Kelley*, 962 F.3d at 477–78; *Denson*, 963 F.3d at 1089 (alternative holding). Three have held that it *must* recalculate the range based on current law. *See Chambers*, 956 F.3d at 672, 675; *Boulding*, 960 F.3d at 784–85; *Brown*, 974 F.3d at 1144–45. And five more have said that it *can* consider a fully updated range but need not. *Concepcion*, 991 F.3d at 290; *Moore*, 975 F.3d at 92 & n.36; *Hudson*, 967 F.3d at 611–12; *White*, 984 F.3d at 90 (dictum); *Harris*, 960 F.3d at 1106 (same). The Majority joins the second group. But the Act directs us to the third.

# I. NO STATUTE REQUIRES REDOING THE DEFENDANT'S GUIDELINES RANGE FROM SCRATCH

A sentence is part of a "final judgment." 18 U.S.C. §3582(b). So a court can reduce it only as "expressly permitted by statute" or rule. §3582(c)(1)(B). Two statutes, the Majority holds, not only expressly permit but require redoing the Guidelines range based on current law. But those statutes do not go that far.

The Act lets a sentencing court reduce a drug sentence. To do that, the court must calculate the defendant's sentence "as if" the Fair Sentencing Act's new statutory minima were in place at the time of the crime. §404(b). But that is it. By singling out one law, Congress did not "invite[] the district court to apply [other] changes in the law." *Concepcion*, 991 F.3d at 286. The court sits as if it were in the past, updating just one variable. *Id.* at 286, 289. It need not look to other laws passed after "the covered offense was committed." §404(b).

In holding otherwise, the Majority and other circuits rest on just one statutory word: "impose." The court "impose[s]" a sentence. §404(b). To do that, the sentencing court must consider the §3553(a) factors, including the Guidelines range, "anew." Maj. Op. 11; *Chambers*, 956 F.3d at 672–73. This means, my colleagues reason, that the court must apply new law and correct errors in the Guidelines range that have popped up in the meantime.

But the statutory sentencing factors imported by the Act do not require that. True, the sentencing court must start with the defendant's Guidelines range. §3553(a)(4). But considering

the Guidelines range is not the same as redoing it from scratch. The statute says nothing about updating that range at a sentence reduction to account for new statutes or cases. It speaks only of the Guidelines that "are in effect on the date the defendant is sentenced." §3553(a)(4)(A)(ii). So "impose" cannot bear that much weight.

Seeking more textual footing, the Majority suggests that a reduction based on an older Guidelines range might be "greater than necessary" to punish the defendant. §3553(a); Maj. Op. 12–13. But that textual directive is not about the Guidelines range. It is the sentence, not the range, that must be "no[ ] greater than necessary" to punish the defendant and protect the public. If a range does not reflect a defendant's danger or blameworthiness, courts can and do vary downward. But that is up to their sound discretion.

## II. THOUGH COURTS NEED NOT REDO RANGES, THEY HAVE DISCRETION TO CONSIDER UPDATED GUIDELINES

The First Step Act and §3553 neither require recalculating ranges from scratch nor forbid it. Congress did not draft the Act "on a blank slate." *Easter*, 975 F.3d at 324 (quoting *United States v. Rose*, 379 F. Supp. 3d 223, 233 (S.D.N.Y. 2019)). It expected courts to exercise broad sentencing discretion. Congress told courts not that they must reduce sentences, but that they "may" do so. §404(b). The Act set no limits on what courts *can* consider in exercising that discretion, only what they *must*.

Faced with a First Step Act motion, the court starts with the defendant's Guidelines range, updated "as if" the new statutory

3

punishments were in place back then. § 404(b). That range anchors the court's discretion but does not limit it. Then, the court must look holistically at the whole case, including the defendant and his crime. *Easter*, 975 F.3d at 326–27. In exercising its discretion to vary downwards, it can consider new facts and new law.

The District Court did just that here. It started with Murphy's original range, amended only to reflect the new statutory punishments. Then, doubtful that he would be a career offender if sentenced today, it exercised its discretion to vary downwards. In doing so, the court followed the law.

### III. *EASTER* IS NOT ON POINT

Finally, the Majority insists that *Easter* requires this new Guidelines calculation. Maj. Op. 11, 18. It does not.

*Easter* dealt with a different issue. There, the district court refused to consider the defendant's rehabilitation in prison. 975 F.3d at 322. We held that it must. *Id.* at 323. When deciding whether to reduce a sentence, district courts must consider all the relevant § 3553(a) factors. *Id. Easter* did not involve any changed Guidelines or case law. The parties neither briefed nor argued about redoing the Guidelines range to reflect new law. So we had no occasion to consider that issue. *Easter* does not control this case; the Act's text does.

\* \* \* \* \*

The First Step Act requires a sentencing court to update one law but lets it consider others. The District Court saw that discretion and exercised it here, giving Murphy a break. Even so,

4

the Majority vacates and remands, requiring it to redo the Guidelines range to account for every new law. Because that approach misreads the Act, upsets finality, and puts us on the wrong side of a three-way circuit split, I respectfully dissent.